MICHIGAN MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

Wayne Davis SMOOT, Sr., Debbie
Smoot, Ronald M. Cohen, Esquire,
Ronald M. Cohen & Associates, P.C.,
Robert R. Michael, Esquire, and Sha-
doan & Michael, LLP, Defendants.

No. CIV.A.00–1026–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 22, 2000.

Henry Cannon Spalding, III, Sands, Anderson, Marks & Miller, Richmond, VA, for Plaintiff.

Christopher P. Schewe, Alexandria, VA, Thomas Leo Appler, Crews & Hancock, Fairfax, VA, Matthew William Lee, Eccleston and Wolf, Washington, DC, for Defendants.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendants Wayne Davis Smoot, Sr. and Debbie Smoot's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). The principle issue before the Court is whether a worker/claimant in a personal injury action is required by the Virginia Workers' Compensation Act to reimburse the workers' compensation carrier the amount in benefits previously paid by the carrier to the worker. Related issues are whether the worker's retention of his personal injury award amounted to conversion of the monies to which the carrier is entitled; whether the worker's failure to reimburse the carrier amounted to a breach of the worker's employment contract; and whether the worker and his attorneys' retention of the personal injury award amounted to a conspiracy to injure the carrier's trade or business.

In this case, a worker was injured in an automobile accident while he was performing duties in the course of his work as a tow truck driver. The worker filed a claim for workers' compensation, and Michigan Mutual Insurance Company, the employer's insurance carrier, paid him benefits. The worker later hired attorneys to pursue his claim against the third-party tortfeasor. The workers' compensation carrier was aware of the pending lawsuit, but did not assert its statutory subrogation rights in the course of the worker's lawsuit. The worker's attorneys settled the lawsuit and secured a financial settlement. Legal fees and costs were paid to the attorneys, and the remainder of the settlement proceeds were disbursed to the worker.

The workers' compensation carrier has brought this suit against the worker and the attorneys, seeking to recover from them the full amount of workers' compensation benefits paid to the worker. The workers' compensation carrier's claim is essentially that the Workers' Compensation Act affords the carrier a self-executing "lien" against the worker's proceeds from the lawsuit, and that the worker and the worker's attorneys are required to collect the amount of the workers' compensation benefits for the carrier from the proceeds of any recovery.

The worker asserts that the Workers' Compensation Act affords a workers' compensation carrier certain statutory rights to subrogate itself for the worker in a lawsuit, as well as the right to intervene in any pending lawsuit and to assert a claim. The worker disputes the workers' compensation carrier's contention that these rights amount to a "lien" for reimbursement. The worker contends that, because the carrier did not assert its rights in the worker's third-party suit, the worker is not liable to reimburse the carrier the amount of the workers' compensation benefits. Moreover, the worker asserts that, under Virginia law, the workers' compensation carrier does not have a cause of action; neither statutory nor common law provides for reimbursement of paid benefits from a worker's tort action recovery. Rather, the Supreme Court of Virginia has ruled that where a worker settles a third-party tort claim without the consent of the workers' compensation carrier, then the carrier may withhold from the worker payment of any future claims for benefits.

Upon consideration of the Virginia Workers' Compensation Act and the common law of Virginia, the Court holds that even where the workers' compensation carrier does not assert its statutory rights in a pending tort proceeding, the worker is obligated to reimburse the carrier for compensation paid to the worker.

## I. FACTUAL BACKGROUND

Defendant Wayne Smoot ("the Worker") was an employee of Henry's Wrecker Service Company ("Wrecker Service"). Defendant Debbie Smoot is the Worker's wife (collectively "Smoots"). Plaintiff Michigan Mutual Insurance Company ("Michigan Mutual" or "Carrier") is the Wrecker Service's workers' compensation insurance provider.

The Worker was injured in a motor vehicle accident on March 6, 1995 during the course of his employment. He applied for, and received, workers' compensation in the amount of $162,587.57 from Michigan Mutual. The Worker and his wife subsequently sued the other driver involved in the accident in federal court. Defendant Ronald M. Cohen, Esquire, Defendant Ronald M. Cohen & Associates, P.C. (Defendant Cohen's firm), Defendant Robert R. Michael, Esquire, and Defendant Shadoan & Michael, LLP (Defendant Michael's firm) (collectively "Attorneys") represented the Smoots in the third-party action. Michigan Mutual notified the Smoots that Michigan Mutual asserted a "lien" in the amount of the workers' compensation award. However, Michigan Mutual did not intervene or assert any of its rights in the third-party action. Without Michigan Mutual's knowledge or consent, the parties settled the third-party action on June 22, 1998 for $500,000.00.

The third party's insurer issued a check payable to the Smoots, Shadoan & Michael, LLP, and Robert R. Michael. Defendant Michael deducted the attorneys' fees and costs from the settlement and disbursed the remainder. The Smoots received $326,672.49, and the Attorneys received $166,666.66 in attorneys' fees and $6,660.85 for the reimbursement of expenses. Michigan Mutual asked the Worker and his Attorneys to reimburse Michigan Mutual the amount of the workers' compensation benefits. The Worker and his wife have refused Michigan Mutual's requests.[1]

1. The Attorneys' refusal of Michigan Mutual's request is the subject of a separate opinion

issued by this Court. *See Michigan Mutual*

Michigan Mutual filed a petition with the Virginia Workers' Compensation Commission to terminate the Worker's compensation benefits, and sought a ruling to compel the Worker and/or his Attorneys to reimburse Michigan Mutual for compensation paid to the Worker. The Commission terminated the Worker's future benefits, because the Worker had settled his tort action without Michigan Mutual's consent. The Commission ruled that it did not have authority to order the Worker or his attorneys to reimburse Michigan Mutual the compensation benefits.

Michigan Mutual sues all Defendants for conversion (Count I), the Worker for breach of his employment contract (Count II), the Worker and his wife for unjust enrichment (Count III), all Defendants for negligent breach of their duty to protect the alleged workers' compensation lien (Count IV), all Defendants for violation of Virginia's Workers' Compensation Act (Count V), and all Defendants for conspiracy to injure Michigan Mutual's trade and business (Count VI).[2] Defendants Wayne Davis Smoot, Sr. and Debbie Smoot jointly filed a Motion to Dismiss.

## II. STANDARD OF REVIEW

The Court reviews the facts underlying a Rule 12(b)(6) motion and accepts the Complaint's factual allegations as true. *See Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). The Court considers the Complaint and its allegations in the light most favorable to the non-moving party. *See id.* The Court shall not grant a motion to dismiss for failure to state a claim unless it appears to a certainty that the plaintiff cannot prove any set of facts in support of its claim which would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Ins. Co. v. Smoot, et al.,* No. 00–01408–A (E.D.Va. Dec. 11, 2000).

## III. ANALYSIS

### Statutory Analysis

■ As a preliminary matter, a number of Michigan Mutual's claims against the Smoots are based on Michigan Mutual's misapprehension of a workers' compensation carrier's rights under the Workers' Compensation Act ("Act"). Sections 65.2–309 and 65.2–310 of the Virginia Code give Michigan Mutual certain rights that are derivative of the Worker's rights. VA. CODE §§ 65.2–309, –310 (1995). The Act grants Michigan Mutual the right of subrogation. Subrogation granted a right to Michigan Mutual to assert Smoot's tort claim against the tortfeasor. *See id.* § 65.2–309. Subrogation is not self-executing under the Act; an act of intervention is necessary.

In this case, to assert its statutory rights, Michigan Mutual could have brought a lawsuit against the third-party tortfeasor in Michigan Mutual's own name or in Smoot's name (i.e., file a third-party lawsuit). *See id.* § 65.2–309. Alternatively, Michigan Mutual could have permitted Smoot to institute a lawsuit, then Michigan Mutual could have intervened prior to the verdict or settlement and moved the Court to order the third-party tortfeasor to reimburse Michigan Mutual for the benefits it has already paid the Worker. *See id.* §§ 65.2–310, –313. These options are set forth explicitly in the Act:

A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal

**2.** Michigan Mutual also sues the Attorneys for tortious interference with the employment contract between the Worker and the Wrecker Service (Count VII).

representative, the legal liability of such other party.

VA. CODE § 65.2–309.

In any action by an employee, his personal representative or other person against any person other than the employer, *the court shall, on petition or motion of the employer* at any time *prior to verdict,* ascertain the amount of compensation paid and expenses ... incurred by the employer under the provisions of this title and deduct therefrom a proportionate share of such amounts as are paid by the carrier for reasonable expenses and attorney's fees as provided in § 65.2–311; and in the event of judgment against such person other than the employer, *the court shall in its order require that the judgment debtor pay* such compensation and expenses of the employer, less said share of expenses and attorney's fees, so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

VA. CODE § 65.2–310 (emphasis added). In short, the statute states that a carrier will assert its claim in the lawsuit and request that the court order *the tortfeasor* to reimburse the carrier for benefits the carrier has paid.

■ Michigan Mutual is not entitled to reimbursement from the Smoots under the plain language of the Virginia workers' compensation statute. Section 65.2–310 specifies the party from whom a carrier could have obtained a judgment, detailing the court's obligation to compel the tortfeasor to reimburse the workers' compensation carrier out of the tort action judgment the compensation benefits the insurer has paid. *See id.* § 65.2–310. The subrogation right set forth in the statute does not give an insurer such as Michigan Mutual the right to reimbursement from a worker. A case from another jurisdiction clarifies that subrogation is the "right to collect [against the third party] through

assignment of the [claimant's] rights;" while the "right of reimbursement creates ... a cause of action against the claimant who has recovered from the third party." *St. Joseph Healthcare Sys. v. Travelers Cos.,* 119 N.M. 603, 893 P.2d 1007, 1010 (N.M.App.1995) (internal quotations omitted). The Virginia workers' compensation statute provides for the former, not the latter. *See* VA. CODE § 65.2–309.

However, although the statute does not explicitly provide for a right of reimbursement, Virginia case law supports a claim in equity for reimbursement. Historically, Virginia courts have read into the statute the goal that an employee not receive a double recovery. *See, e.g., Feitig v. Chalkley,* 185 Va. 96, 38 S.E.2d 73, 76 (1946) (stating that an employee sues for his own benefit and the benefit of the employer, and that the amount of damages is divided between the employer and the employee); *Noblin v. Randolph Corp.,* 180 Va. 345, 23 S.E.2d 209, 210, 214 (1942) (indicating that the current reading of Virginia Code § 65.2–310 [3] is worded to give an employee the opportunity to obtain one full recovery and to prohibit him from receiving a double recovery for his injuries). In the case of *Noblin v. Randolph Corporation,* Virginia's highest court detailed the history of Virginia's Workers' Compensation Act. 180 Va. 345, 23 S.E.2d 209 (1942). The court in *Noblin* explained that when the Act was first adopted in 1918, it was crafted so that an employee could claim compensation from his employer, but could not sue his employer. *See id.* at 210. However, the employee retained the remedy at common law to sue a third party who was responsible for the employee's injuries. *See id.* at 210, 211–12. "In such an event, an employee could obtain a double recovery for the same injuries." *Id.* The General Assembly of Virginia amended the Act in 1920 to eliminate the possibility of such double recovery. *See id.* at 210, 212. In 1924, the Act was amended again, and was

---

3. When Virginia's highest court decided *Noblin,* this section of the statute was codified as Acts 1918, c. 400, § 12, as amended by Acts 1936, c. 369. *See Noblin,* 23 S.E.2d at 209, 211.

interpreted by the courts to bar an employee from suing a third party for the negligence that caused the employees injuries if the employee had already received a workers' compensation award. *See id.* at 212 (citations omitted). The bar to suit clearly evidenced an intent to prevent the employee from recovering twice. The 1932 amendments continued to evidence this intent, requiring an employee to choose whether he would institute action against the negligent third party or claim compensation from the employer. *See id.* at 213. However, the election between workers' compensation and tort action recovery resulted in the employee being denied the fullest possible recovery if one of the awards would have exceeded the other. Therefore, in 1936, the General Assembly repealed the amendments adopted after 1920 and reenacted the 1920 amendment to permit an employee to receive a workers' compensation award plus the excess over the award recoverable from a third party. *See id.* at 214. *Noblin* demonstrates that the General Assembly intended that the third-party recovery up to the amount of the compensation benefits paid would go to the employer or workers' compensation carrier. *See id.* at 215.

Virginia courts continue to permit employers and carriers to seek remedies outside of the statute to obtain reimbursement. Recently, Virginia circuit courts have interpreted the statute to permit carriers to sue for reimbursement by noting that the statute does not expressly state that the assignment and subrogation procedures in sections 65.2–309 and 65.2–310 are the exclusive means by which a carrier can be reimbursed. *See Sellers v. Lucas,* No. CL93001068, 4 (Va.Cir.(Roanoke) Nov. 28, 2000) (Weckstein, J.) (unpublished letter opinion) (quoting *Aetna Cas. and Sur. Co. v. Boiler Brick & Refractory Co., Inc.,* 48 Va. Cir. 572 (1960)); *Floyd v. O'Briskie,* 33 Va. Cir. 341, 1994 WL 1031121, *1 (1994) (holding that an employer need not proceed under §§ 65.2–309 and 65.2–310 to receive reimbursement)[4]; *see also Aetna Cas. and Sur. Co.,* 48 Va. Cir. at 575 (stating that although the statute grants an employer a complete remedy, nothing in the statute states that the statute's procedures are exclusive). The court in *Floyd* held that requiring a carrier to invoke the provisions of the statute to obtain repayment "would effectively circumvent [the statute's] purpose, extinguishing the right to reimbursement and providing an unintended windfall to the employee." 33 Va. Cir. 341, 1994 WL 1031121, at *1; *see also Aetna Cas. and Sur. Co.,* 48 Va. Cir. at 575 (noting that it was not intended that an employee should recover twice).

---

**4.** The *Floyd* court further held that only if a dispute exists concerning the amount to which the carrier is entitled does a carrier need to petition a court for an order calculating the amount the carrier is to be reimbursed, and ordering the third-party tortfeasor to pay that amount. *See* 33 Va. Cir. 341, 1994 WL 1031121, at *2 (citing VA. CODE § 65.2–310). This Court does not adopt this aspect of *Floyd's* holding. This Court holds that the procedures outlined in section 65.2–310 can be used any time an employer or carrier wants to assert its rights of assignment and subrogation; the statute does not state that the 65.2–310 procedures are to be used only when there is a dispute. *See* VA. CODE § 65.2–310; *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46:01 (6th ed.2000) (stating that where the language of a statute is clear, the court may not go outside the statute to give it a different meaning); 3A NORMAM J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 73.02 (5th ed.1992) (stating that workers' compensation statutes are to be given their plain and literal meaning).

The *Floyd* court also labeled the carrier's interest in reimbursement as a "lien." However, the *Floyd* court did not enforce the interest as a lien against a tort award already paid to the employee. Instead, after the jury rendered its verdict, the carrier requested that the court follow the kind of procedures outlined in section 65.2–310 and include the carrier's right to payment in the order to the tortfeasor. *See Floyd,* 33 Va. Cir. 341, 1994 WL 1031121, at *2 Therefore, there was no "lien" against monies actually recovered by the employee. As explained herein, the Court finds that a workers' compensation carrier does not have a "lien" against an employee's tort action recovery. *See infra,* section III, *Assessment of Plaintiff's Claims, Count I.*

Virginia courts have held that carriers have a right to reimbursement despite the language of Virginia's statute because of the overarching policy in this area of law against an injured employee being twice compensated for the same injury. A leading treatise on the law of workers' compensation explicitly and repeatedly states that there is a strong policy against permitting an injured employee a double recovery. *See* ARTHUR LARSON, 6 LARSON'S WORKERS' COMPENSATION LAW § 110.02 (2000) ("It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery."). In order to fulfill this policy, several state statutes contain language to prevent an employee from keeping both compensation benefits and damages received in tort proceedings. *See, e.g.,* R.I. GEN. LAWS § 28–35–58 (1999); 820 ILL. COMP. STAT. 305/5(b) (West 1993); FLA. STAT. ANN. § 440.39(3)(a) (West 1991); N.M. STAT. ANN. § 52–5–17(A) (West 1991). The policy against double recovery has been upheld in Virginia by the state's common law. *See infra,* section III, *Assessment of Plaintiff's Claims, Count III.*

■ In short, despite the language of the statute, the policies underlying workers' compensation law and the Virginia courts' holdings that carriers are not limited to the remedies provided in the statute support a claim in equity for reimbursement. Accordingly, the Court holds that Michigan Mutual is authorized to sue the Smoots in equity for reimbursement to avoid double recovery for a single injury.

### *Assessment of Plaintiff's Claims*
### *Count I*

■ The Court grants the Smoots' motion to dismiss Michigan Mutual's conversion claim, because Michigan Mutual does not sufficiently plead all of the elements of a cause of action for conversion.

The elements of conversion are (1) the wrongful assumption or exercise of the right of ownership over goods or chattels, (2) that belong to another, (3) inconsistent with, or in denial of the owner's rights. *See Economopoulos v. Kolaitis,* 259 Va. 806, 528 S.E.2d 714, 718 (2000). Only a party that has a property interest in and is entitled to the immediate possession of an item can bring an action for conversion. *See id.* Michigan Mutual asserts that the Smoots wrongfully exercised the right of ownership over the entire monetary recovery the Smoots received from the third-party action. Michigan Mutual contends that it was entitled to the settlement monies, having informed the parties that it was asserting a lien before the Smoots settled their third-party action. (Compl. ¶ 16.) However, Michigan Mutual's claim must fail because it was not entitled to the monies paid directly to the Smoots.

Contrary to Michigan Mutual's assertion, it did not have a lien against the funds paid to the Smoots. A "lien" is not automatically created simply by Michigan Mutual's disbursal of benefits under its policy.[5] Sections 65.2–309 and 65.2–310 of the Act do not use the word "lien" to define the carrier's right to assert a claim for "compensation paid and expenses." VA. CODE §§ 65.2–309, –310. A "lien" is a property right; it is an encumbrance or charge on property that belongs to another. A party holding a "lien" against another's property has an automatic right or claim against that property. *See* BLACK'S LAW DICTIONARY 922 (6th ed.1990). A lien is a charge for the payment of an obligation that is independent of the lien. *See* 53 C.J.S. *Liens* § 1 (1948). Therefore, a lien confers no right of property upon the lien holder. *See* 12A MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA § 2 (1989).

The fact that the term "lien" has a specific meaning and is not used in the Act is

---

5. The statute applicable to this case is distinguishable from statutes which explicitly state how and/or when a lien is created. *See, e.g.,*

VA. CODE §§ 8.01–66.2, –66.5, –66.9 (stating by what actions a health care provider can create a lien against a third-party).

instructive. The leading treatise on statutory construction advises the courts to look to the plain and literal meaning of a workers' compensation statute where the statute is not ambiguous. *See* 2A SUTHERLAND STATUTORY CONSTRUCTION § 46:01; 3A SUTHERLAND STATUTORY CONSTRUCTION § 73.02. In this case, the statute can be compared with other state statutes that clearly and unambiguously intend for an insurance carrier to have a lien against third-party action recoveries in this context. *See, e.g.,* FLA. STAT. ANN. § 440.39(3)(a); 820 ILL. COMP. STAT. 305/5(b); IOWA CODE ANN. § 85.22(1) (West 1996). The Florida workers' compensation statute provides:

> Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his or her dependents, *which notice shall constitute a lien upon any judgment or settlement* recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law ....

FLA. STAT. ANN. § 440.39(3)(a). Similarly, the Iowa statute provides that if an employee receives compensation benefits and then recovers damages in tort, the insurer "shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable."[6] IOWA CODE ANN. § 85.22(1). The Illinois workers' compensation statute begins by obligating an employee to reimburse an insurance carrier out of any tort action recovery the amount in benefits the employee received. *See* 820 ILL. COMP.

STAT. 305/5(b). The Illinois statute then gives an employer or insurer the option to claim a lien, for added protection. *See Scott,* 234 Ill.Dec. 469, 703 N.E.2d at 88 (noting that the lien option is an additional means to protect the employer's right to reimbursement):

> If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer *may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated* from such third party.

820 ILL. COMP. STAT. 305/5(b) (emphasis added). There is a marked difference between these statutes and the Virginia Workers' Compensation Act, which does not explicitly reference the creation of a "lien." Yet, the Act still unambiguously sets forth avenues through which an employer or insurer may obtain reimbursement for the funds it paid a worker in compensation benefits. The unambiguous language and meaning of the Act must govern. *See* 3A SUTHERLAND STATUTORY CONSTRUCTION § 73.02; 2A SUTHERLAND STATUTORY CONSTRUCTION § 46:01.

Under the framework of the Act, Michigan Mutual did not and does not possess a statutory lien; Michigan Mutual's rights are more accurately characterized as a "claim." A claim is generally a liability in personam; while a lien is a liability in rem. *See* 12A MICHIE'S JURISPRUDENCE § 2. The Act gave Michigan Mutual the right to assert a claim in the third-party action, and afforded Michigan Mutual a claim against the third-party tortfeasor for reimbursement, which could be asserted in a lawsuit.[7] However, the statute provides

---

**6.** In order to continue and preserve the lien after its automatic creation, the employer or insurer must file notice of the lien within 30 days of notice of the employee's suit. *See* IOWA CODE ANN. § 85.22(1).

**7.** A claim is more comprehensive than a lien; it may embrace both a personal liability and a

lien on property. *See* 12A MICHIE'S JURISPRUDENCE § 2. However, the language of the Workers' Compensation Act makes clear that any lien on property encompassed within Michigan Mutual's "claim" would be against the property of the third-party tortfeasor. *See* VA. CODE § 65.2–309 (providing that the car-

for the assertion of this latter claim *before any judgment or settlement,* by petitioning or moving the Court to calculate the amount to which Michigan Mutual was entitled and to order the tortfeasor to pay Michigan Mutual that amount. In this case, Michigan Mutual never asserted its rights under either of the two options set forth in the Act. Michigan Mutual was not entitled to the tort monies paid to Smoot and his wife because the statute's language does not impose any obligation on a worker to reimburse an insurance carrier. Therefore, Michigan Mutual's claim of conversion will not lie against the Smoots.

Because the Smoots were entitled to the tort action recovery, and because Michigan Mutual did not intervene in the action or request a compensation calculation from the Court, *see* VA. CODE § 65.2–310, Michigan Mutual never had the right to immediate possession of the Smoots' portion of the third-party action settlement. Thus, the Court holds that Michigan Mutual has not pled a cause of action for conversion.

*Count II*

■ The Court also holds that Michigan Mutual has not pled any set of facts upon which its claim for breach of contract can be granted. Michigan Mutual asserts that the Workers' Compensation Act was a part of Wayne Smoot's employment contract with the Wrecker Service. Michigan Mutual argues that Smoot breached his employment contract by violating his duty under the Act to reimburse Michigan Mutual. First, Smoot could not have breached his employment contract by violating the Act because the Court holds that Smoot had no duty to reimburse under the language of the Act. Second, there is no support that the Act forms part of an employment contract between Smoot and the Wrecker Service. Michigan Mutual makes conclusory and unsupported allegations, failing to indicate that there was an actual employment contract between

Smoot and the Wrecker Service or that the terms of Smoot's entitlement to workers' compensation, and duties under the Act, were in that contract. The Court need not accept as true Michigan Mutual's conclusory allegations that the Act was a part of an employment contract between Smoot and his employer. *See Volpone v. Caldera,* 190 F.R.D. 177, 180 (E.D.Va.1999) (finding that a court need not accept unsupported, conclusory allegations).

■ In addition, Michigan Mutual does not have standing to assert a claim of contract breach. One must be a party to, or a beneficiary of, a contract to sue on that contract. *See generally* RESTATEMENT (SECOND) CONTRACTS § 2 (1981). Michigan Mutual has not pled, and the facts do not suggest, that Smoot's compensation carrier is a party to the employment contract between Smoot and his employer, the Wrecker Service. Also, Michigan Mutual cannot assert a claim for breach of contract as a third-party beneficiary. In order to have standing to sue for breach of contract as a third-party beneficiary, the contracting parties must "clearly and definitely" intend to confer a direct benefit on the third party. *See Kelley v. Griffin,* 252 Va. 26, 471 S.E.2d 475, 477 (1996). Michigan Mutual has not pled that the Wrecker Service and Wayne Smoot intended to confer a benefit upon Michigan Mutual in arriving at Smoot's employment terms. Also, regardless of what Michigan Mutual has pled, it is difficult to conceive of how a contract for employment can be meant to benefit the party responsible for paying a worker if the worker is injured during the course of the worker's employment. It is more conceivable that Smoot would be seen as a beneficiary of Michigan Mutual's insurance contract with the Wrecker Service to provide the Wrecker Service's employees with compensation benefits. Consequently, the Court holds that Michigan Mutual does

rier is subrogated to the employee's right to sue the third party); *id.* § 65.2–310 (providing that the court may require the judgment debtor to pay the employer's compensation and expenses).

not have standing to sue for breach of contract.

The Court's holdings that Smoot is not obligated under the explicit language of the Workers' Compensation Act to reimburse Michigan Mutual; that Michigan Mutual has not sufficiently pled the existence of an employment contract, or that the Act is a part of that contract; and that Michigan Mutual does not have standing to sue on any contract of employment between Smoot and the Wrecker Service lead the Court to the ultimate holding that Michigan Mutual's claim for breach of contract must fail.

*Count III*

█ The Court holds that Michigan Mutual has stated a claim for unjust enrichment. Michigan Mutual presents a persuasive argument that permitting the Smoots to retain the full amount of the settlement from the tort action and the amount in compensation benefits permits Wayne Smoot to be compensated twice for the injuries he sustained, at Michigan Mutual's expense. This is generally the kind of "unjust enrichment" that a court appropriately may seek to avoid by imposing a constructive trust. *See Cooper v. Cooper,* 249 Va. 511, 457 S.E.2d 88, 92 (1995); *Leonard v. Counts,* 221 Va. 582, 272 S.E.2d 190, 195–96 (1980) (holding that a constructive trust arises whenever one holding title to property is subject to an equitable duty to convey it to another on grounds that the holder of property would be unjustly enriched if he were permitted to retain it). The court in *Leonard v. Counts* made clear that constructive trusts are flexible remedies to be applied whenever necessary to avoid injustice. *See Leonard,* 272 S.E.2d at 195. The principles underlying the law of workers' compensation and the case law reflect the accepted proposition that to permit Smoot to keep his full tort award and all of his workers' compensation benefits would be unjust.

As previously noted, there is a strong principle against double recovery sounding in workers' compensation law. *See infra,* section III, *Statutory Analysis;* 6 LAR-SON'S WORKERS' COMPENSATION LAW § 110.02. Several state statutes contain language to prevent an employee from keeping both compensation benefits and damages received in the proceeding against the tortfeasor who caused the employee's injury. *See, e.g.,* R.I. GEN. LAWS § 28–35–58; 820 ILL. COMP. STAT. 305/5(b); FLA. STAT. ANN. § 440.39(3)(a); N.M. STAT. ANN. § 52–5–17(A); IOWA CODE ANN. § 85.22(1) In interpreting its statute, Rhode Island's courts, like courts of other states, have distinguished between an employee's entitlement to *receive* both tort damages and compensation, and the authorization for the employee to *retain* both damages and compensation. *See Matteson v. Travelers Ins. Co.,* 738 F.2d 619, 622 (1st Cir.1984); *see also Scott,* 234 Ill.Dec. 469, 703 N.E.2d at 88. This distinction is reflected in the Rhode Island workmen's compensation statute. The statute states that:

Where the injury for which compensation is payable under chapters 29–38 of this title was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under those chapters for that compensation.

R.I. GEN. LAWS § 28–35–58. This language entitles the employee to receive damages and compensation. However, the statute continues:

The employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement.

*Id.*

Relatedly, the New Mexico workers' compensation statute precludes an employee from receiving both damages and a claim of compensation:

[T]he claimant shall not be allowed to receive payment or recover damages for those injuries or disablement and also claim compensation from the employer. N.M. Stat. Ann. § 52–5–17. Cases interpreting New Mexico's statute have labeled it a "reimbursement statute." *See, e.g., St. Joseph Healthcare Sys.*, 893 P.2d at 1009–1010 (citations omitted); *Royal Indem. Co. v. Southern Cal. Petroleum Corp.*, 67 N.M. 137, 353 P.2d 358 (1960) (interpreting an earlier version of the statute containing substantially the same language). New Mexico cases have also emphasized that the insurer's claim for reimbursement proceeds is against the worker, not the third party tortfeasor. *See St. Joseph Healthcare Sys.*, 893 P.2d at 1010. The principle against double recovery is so controlling that in some states an insurer need not formalize its claim before it has a right to reimbursement. *See* 820 ILL. COMP. STAT. 305/5(b); *Scott*, 234 Ill.Dec. 469, 703 N.E.2d at 87–88 (noting that a lien is an optional protection of an employer's right to reimbursement); *Allen v. Texaco, Inc.*, 510 F.2d 977, 982 (5th Cir.1975) (imposing an "equitable lien" upon the judgment to prevent double recovery).

■■■ Like the statutes of other states, the Virginia statute evidences the principle that an injured worker be prevented from obtaining a double recovery. *See, e.g., Tomlin v. Vance Int'l, Inc.*, 22 Va.App. 448, 470 S.E.2d 599, 601 (1996) (noting that the statute was crafted to prevent double recovery); *Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co.*, 115 F.2d 277, 279 (4th Cir.1940) (stating that assignment to the employer of rights "prevents the employee from acquiring for a single injury two separate remedies-the one, in tort, against the third-party tortfeasor, the other, in contract, under the Workers' Compensation Act"). The court in *Tomlin* noted that the purpose behind section 65.2–309 is to reimburse an employer and to prevent an employee from obtaining a double recovery of funds. 470 S.E.2d at 601 (citing VA. CODE § 65.2–309).

Reflecting the policy against double recovery, Virginia tribunals have employed several methods to prevent an employee from retaining both tort and workers' compensation awards. In *Aetna Casualty and Surety Co.*, the court held that the workers' compensation carrier could enforce its right to reimbursement by attachment. 48 Va. Cir. at 576 (finding that assignment and subrogation under the statute were not the exclusive remedies open to the carrier). In *Sellers v. Lucas*, the parties recognized that there was disagreement regarding the issue of reimbursement and so placed the tort award in escrow. *Sellers*, No. CL93001068, at 5. Upon finding that the carrier had a right to reimbursement, the *Sellers* court held that the court would disburse payment to the carrier out of the escrow account. *See id.* The Virginia Workers' Compensation Commission utilizes the termination of an employee's future workers' compensation benefits to prevent double recovery. *See Safety–Kleen Corp. v. Van Hoy*, 225 Va. 64, 300 S.E.2d 750, 753 (1983) (holding that employee was not entitled to double recovery, and forfeits right to future compensation by settling third-party claim without employer's consent); *White Electric Co., Inc. v. Bak*, 22 Va.App. 17, 467 S.E.2d 827, 830 (1996) (stating that future benefits are terminated because settlement without consent defeats employer's right to subrogation); *Ball v. C.D.W. Enterprises, Inc.*, 13 Va.App. 470, 413 S.E.2d 66, 68–69 (1992) (stating that termination of future benefits because of settlement without employer's consent derives from employee's extinguishment of the employer or insurer's subrogation rights); *Barbour v. Residential Electric, Inc.*, 1989 WL 647463, *2 (Virginia Workers' Compensation Commission Apr. 7, 1989) (holding that employee's recovery in third-party action for injury would be charged against any future workers' compensation benefits for the same injury). This Court is satisfied that direct suit against a compensated employee is another valid method of preventing double recovery.

Considering the Virginia courts' interpretation of the statute as being non-exclusive in providing remedies to the carrier, and the fact that Virginia tribunals have employed varied means to prevent double recovery, the Court holds that it is appropriate for a workers' compensation carrier to bring a direct cause of action against an employee to obtain reimbursement. The weight of statutory and common law authority from this and other jurisdictions, as well as the principle against double recovery set forth in leading treatises, lead the Court to conclude that principles of equity require the Smoots to reimburse Michigan Mutual out of the money they received in the settlement of their third-party action. Accordingly, Michigan Mutual has pled a cause of action for unjust enrichment upon which relief may be granted.

*Count IV*

The Court holds that neither Virginia common law nor the Workers' Compensation Act supports Michigan Mutual's contention that the Smoots owed a duty to Michigan Mutual. In Count IV of the Complaint, Michigan Mutual asserts that the Smoots had a duty to protect Michigan Mutual's claim against the settlement proceeds and ensure that Michigan Mutual was reimbursed. As detailed earlier, the statute does not contain any language imposing any such obligation upon an injured worker. *See infra*, section III, *Statutory Analysis*. Therefore, the Court grants the Smoots' motion to dismiss Michigan Mutual's breach of duty claim.

*Count V*

In Count V, Michigan Mutual asserts that the Smoots have breached the Virginia Workers' Compensation Act. Again, the Act does not explicitly articulate a cause of action for a worker's failure to reimburse the workers' compensation carrier. This argument to create a new cause of action must be addressed to the General Assembly of Virginia or the Supreme Court of Virginia. The Court is unwilling to infer a cause of action under the statute. For the reasons detailed above, the Court holds that no action will lie against the Smoots for breach of the statute.

*Count VI*

Regarding the final claim against the Smoots, the Court holds that Michigan Mutual has not pled a cause of action for conspiracy under sections 18.2–499 and 18.2–500 of the Virginia Code. To plead a cause of action for conspiracy, one must show that: (1) two or more persons combine, associate, agree, or mutually undertake together, to (2) willfully and maliciously injure another in his reputation, trade, business, or profession. *See* VA. CODE §§ 18.2–499, –500. Michigan Mutual has not shown that the Smoots "willfully and maliciously" injured Michigan Mutual in its business, as required under the Virginia Code. *See Peterson v. Cooley*, 142 F.3d 181, 188 (4th Cir.1998) (indicating the necessity of pleading willful and malicious purpose to injure one's trade or business). As set forth above, the Smoots merely accepted and retained the amount in tort action damages to which they were entitled from the tortfeasor. The fact that the Smoots have been able to retain both these funds and the amount of benefits paid by Michigan Mutual was due to Michigan Mutual's failure to exercise its subrogation rights or formally assert a lien. *See* VA.CODE §§ 65.2–309, –310. Michigan Mutual's inability to recover the monies paid the Smoots is not due to any overt malicious act by the Smoots. The Smoots' actions as pled do not demonstrate intent or motivation to injure Michigan Mutual in its reputation, trade, or business.

Moreover, the Smoots could not have conspired with the Attorney Defendants. *See Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699, 708 (Va.1987). The attorneys for the Smoots are the Smoots' agents. Generally, an agent cannot conspire with its principal. *See id.*

Because a principal cannot conspire with its agents, and because Michigan Mutual has not demonstrated that the Smoots acted willfully and maliciously, or to injure

Michigan Mutual in its business, the Court finds that Michigan Mutual has not pled a cause of action for conspiracy.

## IV. CONCLUSION

Pursuant to the foregoing analysis, the Court holds that (1) Michigan Mutual's conversion claim is dismissed because Michigan Mutual has not pled facts demonstrating that the Smoots wrongfully exercised control over goods or chattels to which Michigan Mutual had a right of immediate possession; (2) Wayne Smoot owed no duty under his employment agreement to reimburse Michigan Mutual, his workers' compensation provider, and, regardless, Michigan Mutual does not have standing to sue on any employment contract; (3) unjust enrichment should be avoided by requiring the Smoots to repay Michigan Mutual the amount it paid in workers' compensation benefits; (4) the Act did not create in the Smoots an explicit duty to pay Michigan Mutual the amount of the workers' compensation benefits, or to protect Michigan Mutual's subrogation right; (5) the Smoots' refusal to reimburse Michigan Mutual does not constitute a violation of Virginia's Workers' Compensation Act; and (6) the Smoots did not act to injure Michigan Mutual in its business, and they could not conspire with their attorneys, who acted as the Smoots' agents.

Accordingly, it is hereby

ÓRDERED that Defendants Wayne Smoot and Debbie Smoot's Motion to Dismiss as to Counts I, II, IV, V, and VI is GRANTED. It is further

ORDERED that Defendants' Motion to Dismiss as to Count III is DENIED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.