**MICHIGAN MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Wayne Davis SMOOT, Sr., Defendant.**

**No. CIV. A. 00–1026–A.**

United States District Court, E.D. Virginia, Alexandria Division.

June 19, 2001.

Henry Cannon Spaulding, III, Sands, Anderson, Marks & Miller, Richmond, VA, for Plaintiff.

Christopher P. Schewe, Alexandria, VA, Thomas Leo Appler, Crews & Hancock, Fairfax, VA, Matthew William Lee, Eccleston & Wolf, Washington, DC, for Defendant.

### FINAL JUDGMENT AND ORDER

LEE, District Judge.

THIS MATTER is before the Court for a nonjury trial on Plaintiff Michigan Mutual Insurance Company's claim against Defendant Wayne Davis Smoot, Sr. for reimbursement of monies paid to Wayne Davis Smoot, Sr. as workers' compensation benefits. In this case, worker Wayne Davis Smoot, Sr. ("Smoot") was injured in an automobile accident while he was performing duties in the course of his work as a tow truck driver. Smoot filed a claim for workers' compensation, and Michigan Mutual Insurance Company ("Michigan Mutual"), the employer's insurance carrier, paid benefits to Smoot. Smoot later pursued a claim against the third-party tortfeasor that caused the automobile accident. Smoot settled the lawsuit and secured a financial settlement. Smoot paid his attorneys legal fees and costs, and he and his wife received the remainder of the settlement proceeds. Michigan Mutual has brought this suit against Smoot seeking to recover the full amount of workers' compensation benefits paid to Smoot.

Specifically, Michigan Mutual contends that Smoot is required to repay Michigan Mutual the amount of money constituting a double recovery for the injuries that Smoot sustained while working. Michigan Mutual asserts that Smoot's retention of both the workers' compensation benefits and the tort award results in his being u. justly enriched in violation of the purpose and policies underlying the Virginia Workers' Compensation Act. Smoot contends that he has not been unjustly enriched because, in opting to settle his personal injury case outside the procedures outlined by the Workers' Compensation Act, he has made off-setting sacrifices in the form of a waiver of future workers' compensation benefits and of social security set-offs. The question of whether Smoot has been unjustly enriched at the expense of the insurance company is not a question of law, but is a question of fact for a fact-finder. Therefore, the issue before the Court is whether Smoot has been unjustly enriched where he has suffered unwanted financial consequences as a result of settling his suit outside the Workers' Compensation Act and refusing to reimburse the carrier in accordance with the policies underlying the Act.

### I. PROCEDURAL BACKGROUND

Michigan Mutual filed suit against Smoot, his wife, and their tort-action attorneys on June 21, 2000. Michigan Mutual sued all of the defendants for conversion (Count I), negligent breach of their duty to protect an alleged workers' compensation lien (Count IV), violation of Virginia's Workers' Compensation Act (Count V), and conspiracy to injure Michigan Mutu-

al's trade and business (Count VI). In addition, Michigan Mutual sued Smoot for breach of his employment contract (Count II), Smoot and his wife for unjust enrichment (Count III), and Smoot's attorneys for tortious interference with the employment contract between Smoot and his employer (Count VII).

Upon motions to dismiss filed by Smoot's attorneys, the Court dismissed all of Michigan Mutual's claims against the attorneys in a Memorandum Opinion and Order dated December 11, 2000. *See Michigan Mut. Ins. Co. v. Smoot*, 128 F.Supp.2d 917 (E.D.Va.2000). Upon a motion to dismiss filed by Smoot and his wife, in a Memorandum Opinion dated December 22, 2000, the Court dismissed all but one claim against Smoot and his wife; the Court did not dismiss the claim alleging unjust enrichment. *See Michigan Mut. Ins. Co. v. Smoot*, 129 F.Supp.2d 912 (E.D.Va.2000). Subsequently, the remaining parties filed cross motions for summary judgment. In a Memorandum Order dated April 4, 2001, the Court granted in part and denied in part both motions. *See Michigan Mut. Ins. Co. v. Smoot*, No. 00–1026–A, at 8–9 (E.D.Va. Apr. 4, 2001) (unpublished order addressing summary judgment). The Court dismissed Smoot's wife from the action, holding that a claim of unjust enrichment could not lie against her because she had received only one recovery. The Court also granted summary judgment for Smoot by holding that any reimbursement that Michigan Mutual was awarded would be reduced by 35% to account for the percentage of Smoot's settlement that Smoot paid towards attorney's fees. The Court granted Michigan Mutual's motion for summary judgment by holding as a matter of law that Smoot

could not prevail on his affirmative defenses of lack of vigilance, laches, and the statute of limitations. The Court denied both parties' motions for summary judgment on the substantive issues of the unjust enrichment claim. The Court held that a material issue of fact remained as to whether Smoot had been unjustly enriched because Smoot asserted that his financial loss of lifetime medical benefits and diminished social security disability benefits exceeded the value of his tort settlement, and that, therefore, he was harmed by the tort settlement and not unjustly enriched.[1]

This matter convened for trial by the Court on the sole claim of unjust enrichment on April 18, 2001. The principal witness at trial was Mr. Smoot. However, Michigan Mutual also presented the deposition testimony of Mr. Roger Dube, a claims facility manager for Amerisure Companies-which does business as Michigan Mutual Insurance Company and Amerisure Mutual Insurance Company. Smoot also presented the testimony of Mr. James Swiger, an attorney offered as an expert in the tabulation of workers' compensation benefits.

At the close of Michigan Mutual's case, Defendant Smoot moved for judgment on partial findings pursuant to Rule 52 of the Federal Rules of Civil Procedure. The Court denied the motion and proceeded to hear Smoot's case. The Court heard closing arguments on that same day and took the matter under advisement pending the issuance of the Court's Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

Defendant Smoot was an employee of Henry's Wrecker Service Company ("Wrecker Service"). Plaintiff Michigan

---

**1.** In ruling on the motions for summary judgment, the Court also held that a constructive trust was not an appropriate remedy under

the circumstances of this case, and that each party was responsible for its own attorneys' fees and costs.

Mutual is the Wrecker Service's workers' compensation insurance provider. At all times relevant to this action, Michigan Mutual had in effect a policy of workers' compensation insurance issued to the Wrecker Service.

Smoot was injured in a motor vehicle accident on March 6, 1995 in the course of his employment. Smoot applied for, and received, workers' compensation benefits in the amount of $162,587.57 for the injuries he sustained in the March 6, 1995 accident. Michigan Mutual paid the $162,587.57, comprising $51,705.22 for disability compensation and $110,882.35 for medical expenses. (Dep. of Roger Dube at 8.) Smoot and his wife subsequently sued in federal court the tortfeasor who caused Smoot's injuries in the automobile accident. *See generally Smoot v. Gelco Corp.*, No. MJG–97–2867 (S.D. Md.1998). The Smoots were represented by counsel in the third-party action.

In 1995, Michigan Mutual notified the tortfeasor's liability insurance carrier that Michigan Mutual was asserting a "lien" against any damages awarded to Smoot. (Dube Dep., Ex. 1: Letter from J. Bell to Great American Ins. Co. of 6/1/95.) Michigan Mutual notified the Smoots' attorneys on December 16, 1997 that Michigan Mutual asserted a "lien" in the amount of the workers' compensation benefits against any award in the third-party action. (Dube Dep., Ex. 2: Letter from W. Hyland to R. Cohen of 12/16/97.) However, Michigan Mutual did not intervene or assert any of its rights in the third-party tort action.

Without Michigan Mutual's knowledge or consent, the Smoots settled the third-party tort action on June 22, 1998 for $500,000.00. The tortfeasor's insurer issued a check payable to the Smoots and their attorneys. The attorneys deducted attorneys' fees and costs from the settlement and disbursed the remainder. The Smoots received $326,672.49, and the attorneys received $166,666.66 in attorneys' fees and $6,660.85 for the reimbursement of expenses. Michigan Mutual asked Smoot[2] to reimburse Michigan Mutual the amount of the workers' compensation benefits. Smoot refused Michigan Mutual's requests.

Michigan Mutual filed a petition with the Virginia Workers' Compensation Commission to terminate Smoot's workers' compensation benefits, and sought a ruling to compel Smoot to reimburse Michigan Mutual for compensation paid to Smoot. The Commission terminated Smoot's future benefits and medical expenses because Smoot had settled his tort action without Michigan Mutual's consent. The termination of future benefits and expenses became effective September 20, 1998. Michigan Mutual issued its last medical payment to Smoot on September 16, 1998. (Dube Dep. at 9.) However, the Commission ruled that it did not have the authority to order Smoot to reimburse Michigan Mutual the compensation benefits paid by Michigan Mutual.[3] Michigan Mutual seeks reimbursement through this Court.

Smoot spent the $326,672.49 paid to him as an award in the third-party tort settlement. He has not worked since his March

---

2. Michigan Mutual also asked the attorneys and Smoot's wife to reimburse Michigan Mutual. As previously noted, the Court has dismissed these parties from this case.

3. While this Final Judgment and Order was pending, the Court of Appeals of Virginia affirmed the Virginia Workers' Compensation Commission's decision declining to order Smoot to reimburse Michigan Mutual's "lien." *See Henry's Wrecker Service Co. v. Smoot*, 35 Va.App. 365, 545 S.E.2d 551 (Va. Ct.App.2001).

6, 1995 accident. He has paid an average of $10,000.00 per year in medical bills since the accident. Also, Smoot has had six surgical procedures on his heart since 1996. Smoot testified that he has ongoing medical concerns. However, he did not provide competent evidence at trial concerning his future medical expenses. Smoot alone testified about his medical condition and anticipated medical procedures; he did not present expert medical testimony or medical documentation evidence.

Despite the lack of proof of Smoot's future medical expenses, the Court is persuaded by Smoot's testimony that he would not have settled his tort suit had he known that he would not be entitled to future workers' compensation benefits. Michigan Mutual had paid Smoot approximately 180 weeks of workers' compensation benefits, and, according to the testimony of Mr. Swiger, this left a balance of approximately 320 more weeks of payments. Smoot also expected to receive increased Social Security payments in conjunction with his workers' compensation benefits. Smoot did not know what it meant that Michigan Mutual was asserting a workers' compensation "lien." Smoot did not realize that Michigan Mutual would want him to repay out of the tort award the amount Michigan Mutual paid Smoot in benefits. Smoot relied on his attorneys in his third party action to advise him of the consequences of settling his third party case. Smoot's attorneys did not make clear to Smoot that he would owe Michigan Mutual out of his tort settlement, or that Michigan Mutual could terminate Smoot's lifetime indemnity and medical expense benefits as a result of his decision to settle.

4. For a more detailed analysis of the propriety of an unjust enrichment claim in this context, see *Michigan Mut. Ins. Co. v. Smoot*, 129 F.Supp.2d 912 (E.D.Va.2000).

## III. CONCLUSIONS OF LAW [4]

Michigan Mutual is entitled to reimbursement from Smoot of the amount of workers' compensation benefits Michigan Mutual paid to Smoot because a worker is not entitled to a double recovery for work-related injuries, one in workers' compensation, and a second in a full award in tort. The language of the Virginia Workers' Compensation Act does not provide for a right of reimbursement. *See* VA. CODE ANN. § 65.2–309 (creating for insurance carriers a right to intervene in an employee's third-party action, or to subrogate themselves to the rights of the employee and sue directly); *id.* § 65.2–310 (stating that, upon pre-verdict motion by an insurance carrier, the Court shall order a third-party tortfeasor to pay the carrier out of the employee's award the amount the carrier paid the employee in compensation benefits). However, Virginia case law supports a claim in equity for reimbursement. Historically, Virginia courts have read into the workers' compensation statute the principle that workers' compensation should provide injured workers medical care and wage benefits, but should not allow a worker to receive a double recovery, one recovery in compensation benefits, and another in a full tort award. *See, e.g., Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73, 76 (Va.1946) (stating that an employee sues for his own benefit and the benefit of the employer, and that the amount of damages is divided between the employer and the employee); *Noblin v. Randolph Corp.*, 180 Va. 345, 23 S.E.2d 209, 210, 214 (Va.1942) (indicating that the current reading of Virginia Code § 65.2–310 [5] is worded to give an employee the

5. When Virginia's highest court decided *Noblin*, this section of the statute was codified as Acts 1918, c. 400, § 12, as amended by Acts

opportunity to obtain one full recovery and to prohibit him from receiving a double recovery for his injuries). The Workers' Compensation Act has undergone a number of amendments to eliminate the possibility of a double recovery while, at the same time, permitting employees to keep the amount of a third-party recovery that exceeds the amount received in workers' compensation. *See Noblin,* 23 S.E.2d at 210, 212–15 (describing the 1920, 1924, 1932, and 1936 amendments to the Act). Today, the Virginia statute continues to evidence the principle that an injured worker is not entitled to a double recovery. *See, e.g., Tomlin v. Vance Int'l, Inc.,* 22 Va.App. 448, 470 S.E.2d 599, 601 (Va.1996) (noting that the statute was crafted to prevent double recovery); *Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co.,* 115 F.2d 277, 279 (4th Cir.1940) (stating that assignment to the employer of rights "prevents the employee from acquiring for a single injury two separate remedies-the one, in tort, against the third-party tortfeasor, the other, in contract, under the Workers' Compensation Act"). The court in *Tomlin* noted that the purpose behind § 65.2–309 is to reimburse an employer and to prevent an employee from obtaining a double recovery of funds. 22 Va.App. 448, 470 S.E.2d at 601 (citing VA. CODE ANN. § 65.2–309).

■ The Court holds that it would be unjust to permit Smoot to retain the full amount of the settlement from the tort action and the amount in compensation benefits because to do so would permit Smoot to be compensated twice for the injuries he sustained, at Michigan Mutual's expense. Smoot's desire and expectation to continue to receive workers' compensation benefits, and to receive social security set-offs, does not form a legitimate basis for a finding that Smoot has not been enriched unjustly. "Having unilaterally deprived the employer and carrier of their statutory right to seek full reimbursement from the third party, [Smoot] has therefore also eliminated his own statutory right to further compensation." *Safety–Kleen Corp. v. Van Hoy,* 225 Va. 64, 300 S.E.2d 750, 753 (Va.1983). The decision to surrender his right to future compensation was Smoot's to make. If Smoot made such a decision ill-advisedly, then Smoot's remedy lies not in evading his responsibilities as to Michigan Mutual, but in addressing the source of that advice. The pertinent inquiry here is simply whether Smoot received two recoveries for his injury, one in tort and one in contract in the form of compensation benefits. *See Crab Orchard,* 115 F.2d at 279. The evidence demonstrates that Smoot received his tort award as a recovery for the injuries he suffered on March 6, 1995. The evidence further demonstrates that Smoot received his benefits from Michigan Mutual to compensate Smoot for his disability and his medical expenses as a result of the March 6, 1995 accident. Therefore, Smoot has been twice compensated for the same injury.

The evidence at trial does not support a finding that Smoot did not receive a double recovery. Smoot asserts that the total amount of future disability compensation, loss of lifetime medical reimbursement benefits, and diminished social security disability benefits that Smoot has lost as a result of the termination of his workers' compensation claim exceeds the amount Michigan Mutual paid in workers' compensation benefits. However, Smoot has not demonstrated that lost future benefits are a proper factor in the calculus of whether Smoot has received a double recovery. Therefore, the primary inquiry is whether Smoot's tort action recovery took the place

1936, c. 369. *See Noblin,* 23 S.E.2d at 209, 211.

of workers' compensation benefits that Smoot had received or would receive, or whether the tort recovery and the benefits overlapped. *See Barbour v. Residential Elec., Inc.,* 1989 WL 647463, *2 (Va. Indus. Comm'n Apr. 7, 1989) (indicating that total workers' compensation benefits would be decreased by the amount of an employee's tort recovery, and where the tort recovery exceeded benefits paid to date, the excess recovery would be charged against any future compensation benefits for the same injury). Here, Smoot's tort recovery and his benefits overlapped because Smoot refused to repay Michigan Mutual and permit Michigan Mutual to reduce Smoot's total compensation benefits by the amount of the tort recovery.

■ Smoot's surrender of his statutory right to maximum recovery was voluntary and does not negate the fact that Smoot recovered twice for his March 6, 1995 injury. The Workers' Compensation Act schema is designed to permit an employee to receive a maximum recovery, at the employee's option. If an employee brings a tort suit against the third-party who caused the employee's injuries, the Act permits the employee to keep any amount over the workers' compensation award if the third-party recovery exceeds the workers' compensation benefits. *See* VA. CODE ANN. § 65.2–310. At the same time, if an employee brings suit and the workers' compensation benefits exceed the amount awarded in the tort action, the statute enables the employee to repay the compensation carrier and continue to receive compensation benefits over the amount of the tort award. *See Barbour,* 1989 WL 647463, at *2 (holding that employee's recovery in third-party action would be charged against any future compensation benefits). Here, Smoot would have continued to receive valuable future disability and medical benefits if he had acted within the provisions and policies of the Act. *See Safety–Kleen,* 300 S.E.2d at 753 (indicating that employee forfeited his right to future compensation because he settled his third-party claim without employer's consent); *White Electric Co., Inc. v. Bak,* 22 Va.App. 17, 467 S.E.2d 827, 830 (Va.Ct.App.1996) (stating that future benefits were terminated because settlement without consent defeats employer's right to subrogation); *Ball v. C.D.W. Enters., Inc.,* 13 Va.App. 470, 413 S.E.2d 66, 68–69 (Va.Ct.App.1992) (stating that termination of future benefits occurs as a result of settlement without employer's consent). Smoot's waiver of his statutory rights was voluntary and does not terminate Smoot's equitable obligations. For these reasons, the Court finds that Smoot has been enriched unjustly and must repay Michigan Mutual the amount of workers' compensation benefits Michigan Mutual paid to Smoot, minus 35% of the benefits to account for Michigan Mutual's share of the attorneys' fees and costs incurred in obtaining the tort recovery. *See Michigan Mut.,* No. 00–1026, at 8–9.

## IV. DAMAGES

In summary, Michigan Mutual has shown by a preponderance of the evidence that it is entitled in equity to reimbursement in the amount stated below:

| | | |
|---|---|---|
| Benefits paid: | $162,587.57 → | $162,587.57 |
| Attorney's fees: | $162,587.57 × .35 = | − $ 56,905.65 |
| **Difference:** | | $105,681.92 |

The Court, upon consideration of the evidence submitted and the testimony of all the witnesses, returns a verdict for Michigan Mutual Insurance Company on its claim of unjust enrichment against Wayne Davis Smoot, Sr. The Court awards Michigan Mutual Insurance Company a

**236**

judgment against Wayne Davis Smoot, Sr. in the amount of **$105,681.92.**