**Everett F. FINK, Plaintiff,**

**v.**

**William C. DIMICK, Defendant,**

**United States of America, Intervenor.**

**Civ. A. No. 6965.**

United States District Court
D. Connecticut.

May 28, 1959.

Jerome E. Caplan of Rogin, Nassau & Caplan, Hartford, Conn., for plaintiff.

Robert Satter, Hartford, Conn., for defendant Dimick.

Harry W. Hultgren, U. S. Atty., Henry C. Stone, Asst. U. S. Atty., Hartford, Conn., for intervenor U. S.

J. JOSEPH SMITH, Chief Judge.

In this action of interpleader each of the two claimants has filed a motion for summary judgment. Rule 56, F.R.Civ. P., 28 U.S.C. The facts necessary to a decision have been stipulated by the parties and there are no genuine issues as to any material facts.

On May 4, 1953, defendant William Dimick was employed by the United States as an Inspection Engineer at the Springfield Ordnance District, Springfield, Massachusetts. On that date Dimick was officially assigned by the Ordnance District to inspect Plant D of the International Silver Company at Meriden, Connecticut. While in the course of this inspection Dimick sustained back injuries as a result of being struck by forgings falling from a table located in the International Silver plant. As a consequence of these injuries, Dimick incurred expenses for medical care, hospitalization and surgery, and sustained a loss of wages. Within one year of the date of this injury, Dimick filed a claim for compensation with the United States Department of Labor under the Federal Employees' Compensation Act. The injuries sustained by him were found to be compensable and the United States, through its Bureau of Employees' Compensation, has paid Dimick compensation in the amount of $2,130.30 for medical payments and wage losses resulting from the accident, under the provisions of the Act.

On or about August 1, 1953, in order to obtain recompense for his injuries, Dimick retained a Bridgeport, Connecticut attorney to institute suit against the International Silver Company. This attorney failed to bring suit within one year following the date of the accident, with the result that Dimick's personal injury claim against International Silver was barred by the Connecticut one year Statute of Limitations. International Silver declined to waive the bar thus imposed to a suit against it by Dimick.

During the one year period following the accident no request was made by the United States of Dimick to prosecute his personal injury action against International Silver or to assign his claim against International Silver to the United States, as provided in the Act.

After the Bridgeport attorney had allowed the statute of limitations to run, Dimick retained Everett Fink, the plaintiff herein, an attorney, to institute suit against the Bridgeport attorney for malpractice. During the trial of that action, the claim of Dimick against his former attorney was settled for a sum in excess of the $2,130.30 paid to Dimick by the United States as compensation. The United States, acting initially through its Secretary of Labor, James Mitchell, demanded the sum of $2,130.30 from the plaintiff, basing its demand on certain provisions of the Federal Employees' Compensation Act. Dimick demanded the entire fund as money due him from the settlement. Since plaintiff claimed no interest in the fund and was nothing more than a stakeholder, but might be subject to double liability in the event of payment to the wrong party, he instituted this action of interpleader under 28 U.S.C. § 1335, naming Dimick and James Mitchell as the adverse claimants of diverse citizenship to a fund in excess of $500 required by that section, and paying the fund of $2,130.30 into the Registry of this court. Thereafter the United States was granted permission to intervene as a claimant to the fund, on the basis that it, rather than the Secretary of Labor, was the proper party to claim the fund under the particular statutory provisions involved. On

motion by the Secretary he was dismissed from the action, leaving Dimick and the United States as the adverse claimants.

■ Although the defendants as they now stand do not satisfy the requirements of Section 1335 that the adverse claimants be of diverse citizenship, we are satisfied that the court still has jurisdiction of the action. Jurisdiction under Section 1335 originally existed because the defendant Dimick was a citizen of Connecticut while the defendant Mitchell was a citizen of the District of Columbia. If the subsequent change in claimants defeated this source of jurisdiction, it introduced another and thus cured any lack that might have occurred. For with the fund paid into court, plaintiff Fink has been substantially removed from this litigation, although he is still the nominal plaintiff, and the real and only contestants as the case now stands are the United States and Dimick. The petition of intervention of the United States is, in essence, a claim of the United States against Dimick. Thus the United States really occupies the position of a plaintiff here, although denominated a defendant. Under 28 U.S.C. § 1345, a United States District Court has original jurisdiction of all civil actions, suits or proceedings commenced by the United States. In effect such a civil action is what the court now has before it. So whether the source be Section 1335 or Section 1345, we hold that the court has jurisdiction to render a summary judgment in this matter.

■ The Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., provides a comprehensive scheme for the payment of compensation by the United States in the event of the disability or death of one of its employees resulting from a personal injury sustained while in the performance of his duty. Like most workmen's compensation laws, it allows compensation to the injured employee even where a third party has caused the injury to the employee. 2 Larson, Workmen's Compensation Law (1952) Sec. 71.00, p. 165. And again like most such laws, where a third party has caused the injury and compensation is paid, there are provisions in the law which give the payer of compensation a right of subrogation of the injured party's claim against the third party wrongdoer, or a right of reimbursement for compensation paid out of any judgment or settlement the injured party may effect with the third party wrongdoer. The pertinent sections of the Act here involved are as follows:

5 U.S.C.A. § 776. "Subrogation of United States to employee's right of action; assignment by employee; disposition of moneys collected from person liable. If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right which he may have to share in any money or other property received in satisfaction of such liability of such other person, or the commission may require said beneficiary to prosecute said action in his own name.

"If the beneficiary shall refuse to make such assignment or to prosecute said action in his own name when required by the commission, he shall not be entitled to any compensation under this chapter.

"The cause of action when assigned to the United States may be prosecuted or compromised by the commission, and if the commission realizes upon such cause of action, it shall apply the money or other property so received in the following manner: After deducting the amount of any compensation already paid to the beneficiary and the expense of such realization or collection, which sum shall be placed to the credit of the employees' compen-

sation fund, the surplus, if any, shall be paid to the beneficiary and credited upon any future payments of compensation payable to him on account of the same injury."

5 U.S.C.A. § 777. "Adjustment in case of receipt by employee of money or property in satisfaction of liability of third person. If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, or as a result of a settlement made by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received in the following manner:

"(A) If his compensation has been paid in whole or in part, he shall refund to the United States the amount of compensation which has been paid by the United States and credit any surplus upon future payments of compensation payable to him on account of the same injury. Any amount so refunded to the United States shall be placed to the credit of the employees' compensation fund.

"(B) If no compensation has been paid to him by the United States, he shall credit the money or other property so received upon any compensation payable to him by the United States on account of the same injury."

The United States relies on Sec. 777 (A) as giving it a right to the fund paid into court. Defendant Dimick counters that there is nothing in the entire Act which supports the position of the United States, and insists that the money belongs to him free of any government claim.

Sections 776 and 777 of Title 5 have been in force since 1916 without amendment, and so far as we have been able to ascertain, the problem now before us for solution has never before been presented to any federal court, or to any state court under a comparable provision of a state compensation law.

The normal situation envisioned by Sections 776 and 777 involves three parties only, the United States, the injured employee, and the third party wrongdoer who caused the injury and who is legally liable to pay damages to the employee. In order to avoid a double recovery by the employee who has received compensation, Section 776 gives to the government the right to require the employee to assign his cause of action against the wrongdoer to the United States, or to require him to prosecute the cause of action in his own name, under pain of withholding compensation. The United States, through its agents, may prosecute any claim thus assigned to it, and out of any recovery against the third party may reimburse itself for its payments to the employee, any excess going to the employee or credited to future payments. If the government does not require the employee to assign the cause of action to it, and the employee sues or settles with the third party wrongdoer of his own volition, or because the government required him to prosecute the cause of action in his own name, Section 777 gives the government a right to a refund of any compensation paid to the employee, any excess being kept by the employee and credited against future payments.

It is obvious that the literal language of the two sections gives the United States rights of subrogation or reimbursement *only* where the employee has recovered from the person legally liable for his physical injuries—those injuries which disabled him from the performance of his duties as a government employee. Section 790 of the Act, defining "injury" as used in the Act is as follows.

"The term 'injury' includes, in addition to injury by accident, any disease proximately caused by the employment."

The situation here is not of that type. The employee here was and is forever barred from recovering from the person legally liable for his physical injuries, International Silver. Because of the negligence of his attorney, Dimick can never recover from International Silver, so there is no possibility of a literal application of Section 777. But he has recovered from the attorney a sum in settlement of a suit based on that attorney's malpractice. The government contends that the money thus recovered is directly traceable to and cloaked with the identity of the damages International Silver would have had to pay had the attorney brought suit before the statute had run, and that the principle behind Section 777, i. e., the prevention of double recovery by the injured employee, requires that the defendant Dimick reimburse the government for the compensation received.

The government argues that under most state workmen's compensation laws, if the employee's original injuries were aggravated by the malpractice of a physician and the employee successfully sued the malpractitioner, the employer who had paid the employee compensation for his injuries would be entitled to reimbursement out of the fund recovered from the malpractitioner. It is contended that the present situation, where the malpractice is that of an attorney rather than that of a physician, calls for an application of this rule also. However appropriate the rule might be in other situations, it is not applicable here. It may be explained by the fact that under the interpretations given by most states to their workmen's compensation statutes, the aggravation caused by a physician is regarded as a compensable injury in and of itself, 2 Larson, supra, Sec. 72.61, n. 61, p. 188, and thus gives the employer subrogation or reimbursement rights against a person who is a third party wrongdoer within the meaning of the statute, the physician. 2 Larson, supra, Sec. 72.00, p. 170. But an attorney's malpractice, of the type we have here, is not a compensable injury under this rationale. Dimick's attorney's negligence did not aggravate his physical injuries. Thus the government's expenditure of $2,130.30 was not occasioned in any sense by the attorney's malpractice, but only by the initial third party injury, that caused by International Silver. When Dimick applied for compensation he was not seeking, nor did he receive, compensation for injuries as "aggravated" by his attorney, which is the case, as previously stated, under most state statutes where aggravations by a malpracticing physician have been held to be compensable injuries. Parchefsky v. Kroll Bros. Inc., 1935, 267 N.Y. 410, 196 N.E. 308, 98 A.L.R. 1387; Hornetz v. Philadelphia & Reading Coal & Iron Co., 1923, 277 Pa. 41, 120 A. 662; Vatalaro v. Thomas, 1928, 262 Mass. 383, 160 N.E. 269.

Since the government never paid him compensation for the injury he suffered at the hands of his attorney, he is, unlike the situation involving a physician's aggravation, obviously not receiving a double recovery on that score, and the analogy of the malpractice of a physician does not help us.

But, the government further contends, the recovery from the attorney necessarily includes the damages for the original injury lost through the attorney's negligence, and that to allow Dimick to keep both unjustly enriches him at the expense of the government. We do not agree. Under Section 776 the government could have required Dimick to assign his cause of action against International Silver to it, or forced him to prosecute the action in his own name. The government chose to do neither. If Dimick's cause of action had been barred by Dimick's own failure to file suit, rather than that of his attorney, there is no doubt but that the government would have no further rights under Section 776. Since the government did not avail itself of the specific statutory method

allotted to it for protecting its rights in a situation where a third party wrongdoer was involved, we see no reason to strain the language of Section 777 beyond its plain meaning to fit a situation the draftsmen of the statute probably never contemplated. It could hardly be contended that Section 776 would give the United States the right to require Dimick to assign his claim against the negligent attorney to it, on the basis that the framers intended such a result. No sufficient reason appears why the rule should be any different with regard to Section 777. Under the circumstances of this case, where a settlement of the malpractice suit against the attorney was effected, we have no way of knowing what proportion of the amount received in settlement of such a claim, which involves many factors, could properly be allocated to medical expenses, and to wage losses, the items of damage for which Dimick received compensation. We cannot baldly assume that the first $2,130.30 of any settlement or award is properly allocable to such damages, lacking any clear mandate from the statute to make such an assumption. Before this court would extend the "principle" of this legislation to cover the instant situation, we would have to be satisfied that Congress intended such a result. Much could be said both for and against a right of reimbursement in the government in this situation. In the absence of any indication of Congressional intent, and with the realization that there exist reasons both for and against such a result, we believe that any decision to extend Section 777 to cover the present situation must be legislative, not judicial.

The court therefore holds that the defendant Dimick is entitled to judgment as a matter of law. The plaintiff Fink is entitled to be discharged from further liability with regard to this fund, and to receive his costs and a reasonable attorney's fee, which is found to be $250, out of the fund in the hands of the Clerk. United States v. Ullman, D.C.E.D.Pa. 1953, 115 F.Supp. 211. An order will be entered adjudging the defendant Dim-

ick the owner of the fund deposited with the Clerk and entitling defendant Dimick to receive payment of the fund less plaintiff's costs and attorney's fee. Costs and an attorney's fee will not be allowed to defendant Dimick as requested because such an allowance could only run against the United States and is prohibited by 28 U.S.C. § 2412(a). See also Rule 54 (d) F.R.Civ.P.

Form of judgment will be submitted by defendant Dimick upon notice to other parties.