Present: All the Justices

YELLOW FREIGHT SYSTEMS, INC.

OPINION BY
v. Record No. 022244          JUSTICE LAWRENCE L. KOONTZ, JR.
                                       June 6, 2003
COURTAULDS PERFORMANCE FILMS, INC., ET AL.

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

In this appeal, we consider whether the trial court properly ruled that a petition filed under Code § 65.2-310 in a civil action by an employer seeking to enforce subrogation rights for workers' compensation benefits paid was untimely.

BACKGROUND

The essential facts are not in dispute. On January 28, 1998, Milton Earl Oakley (Oakley), a driver for Yellow Freight Systems, Inc. (Yellow Freight), was injured when he was exposed to hazardous chemical fumes while making a delivery for his employer to the Fieldale facility of Courtaulds Performance Films, Inc. and CP Films, Inc. (collectively, Courtaulds). Yellow Freight, which self-insures for workers' compensation coverage pursuant to Code § 65.2-305, paid to Oakley or on his behalf $56,256.69 in workers' compensation benefits.[1] In proceedings before the Workers' Compensation Commission, Oakley's benefits were terminated effective August 11, 1998.

_____
[1] Although the amount paid to Oakley or on his behalf is not disputed, the question whether all the benefits paid were

On January 26, 2000, Oakley filed a motion for judgment in the Circuit Court of Henry County (the trial court) against Courtaulds seeking damages of $5,000,000 for his injuries under theories of premises liability and products liability.[2]  In letters to Oakley's counsel dated July 26, 2000 and September 27, 2000 from Jerry I. Campbell, Yellow Freight's Subrogation Claims Coordinator, Yellow Freight asserted that it had a "lien" or "subrogation claim" of $56,256.69 against any monetary recovery Oakley might obtain from Courtaulds as the result of his lawsuit.  During this period of time, Yellow Freight did not file a petition or motion to enforce this claim in Oakley's lawsuit as permitted by Code § 65.2-310.

On June 1, 2001, Oakley entered into a settlement agreement with Courtaulds, accepting $450,000 in exchange for a full release of his claims against Courtaulds.  The settlement agreement provided, among other things, that "Oakley shall be legally responsible for satisfying all outstanding liens arising from or because of the injuries sustained by Oakley [on January

---

required under the Virginia Workers' Compensation Act was not resolved by the trial court and is not before us in this appeal.

[2] The motion for judgment named four additional defendants, all corporate entities associated with Courtaulds.  Two of these defendants were subsequently nonsuited by Oakley and two others were dismissed with prejudice upon a determination that those entities were not involved in the operation of the Fieldale facility.  These corporate entities are not parties to this appeal.

28, 1998]." The agreement further provided that "while it is the belief and intention of the parties that the claims compensated herein are outside of those for which Oakley has received any compensation under the Virginia Workers' Compensation Act (the 'Act'), [Courtaulds] will nonetheless hold Oakley and his counsel harmless for any lien asserted by Yellow Freight, Inc. under the Act."

On June 7, 2001, Yellow Freight filed a petition, pursuant to Code § 65.2-310, seeking to have the trial court determine the amount of workers' compensation benefits paid to Oakley or on his behalf and to order Courtaulds to pay Yellow Freight that amount from the proceeds of any judgment or compromise settlement Oakley might have from Courtaulds. On June 8, 2001, the trial court, without consideration of Yellow Freight's petition, entered an agreed order dismissing Oakley's motion for judgment with prejudice.

On June 22, 2001, Yellow Freight filed a motion to vacate the June 8, 2001 order. Yellow Freight asserted that its petition barred dismissal of the action until the trial court had determined the amount of compensation paid by Yellow Freight and ordered payment to it of that amount from the settlement proceeds. Courtaulds and Oakley opposed Yellow Freight's motion.

3

On June 29, 2001, the trial court issued an opinion letter indicating it had not been aware of Yellow Freight's petition at the time the order of dismissal was entered and concluding that, because the petition had been filed before judgment was entered, the dismissal was inappropriate without a full consideration of Yellow Freight's rights, if any. By order of even date, the trial court vacated the June 8, 2001 order.

The parties filed briefs addressing the amount of Yellow Freight's claim and its enforceability in Oakley's action against Courtaulds. Relevant to the issue raised in this appeal, Courtaulds and Oakley contended that the execution of the settlement agreement and release on June 1, 2001 terminated any claim Oakley might have had against Courtaulds and, consequently, any right of subrogation of Yellow Freight. Yellow Freight maintained that Code § 65.2-310 provided it with the right to enforce a claim against any recovery by Oakley from Courtaulds at anytime prior to the entry of judgment.

The trial court heard oral argument on March 20, 2002. In an opinion letter dated March 26, 2002, the trial court opined that "Yellow Freight's petition under § 65.2-310 is untimely because [Oakley's] release of [Courtaulds] extinguished Yellow Freight's unmatured claim." In a final order dated June 27, 2002 and incorporating by reference the rationale of the March 26, 2002 opinion letter, the trial court denied Yellow Freight's

4

petition and dismissed Oakley's motion for judgment.  We awarded Yellow Freight this appeal.

DISCUSSION

This appeal involves the statutory scheme embodied in Code §§ 65.2-309 and 65.2-310, parts of the Virginia Workers' Compensation Act, which together afford an employer certain rights to recover amounts paid to or on behalf of an injured employee from a third party responsible for the injury.  As previously noted, the focus of the issue to be resolved is whether Yellow Freight, the employer, timely asserted its statutory rights as provided in this statutory scheme.

In relevant part, Code § 65.2-309(A) provides that "[a] claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee . . . may have against any other party for such injury or death, and such employer shall be subrogated to any such right."  Subsection (A) further provides that the employer may enforce the legal liability of the responsible party in an independent action against that party.  Code § 65.2-309(C) provides that any "compromise settlement . . . made by the employer in the exercise of such right of subrogation" must be approved by "the [Workers' Compensation] Commission and the injured employee."

Code § 65.2-310 provides protection to the employer by allowing recovery of compensation paid to its employee and other expenses paid on behalf of the employee when the employee files an independent action against the responsible third party.  In relevant part, this statute provides that "[i]n any action by an employee . . . against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of compensation paid . . . and, in event of judgment against such person . . . require that the judgment debtor pay [the amount of] such compensation" to the employer from the judgment with the balance paid the employee.[3]

Yellow Freight contends that the resolution of this appeal is controlled by our decision in Liberty Mutual Insurance Co. v. Fisher, 263 Va. 78, 557 S.E.2d 209 (2002).  Specifically, Yellow Freight relies upon our holding that "[t]he language of Code § 65.2-310 does not limit the lien rights created by Code § 65.2-309 when a compromise settlement is reached in a third-party action brought by an injured employee or her personal representative.  The trial court's duty to compute the amount that an employer may recover under its lien is not limited to

---

[3] Both statutes contain provisions for apportionment of attorneys' fees and costs between the employer and the employee, but these provisions are not relevant to the issue raised in this appeal.

actions in which a verdict is reached and a judgment is obtained." Id. at 85, 557 S.E.2d at 212. Yellow Freight asserts that, upon its payment of Oakley's claims for workers' compensation benefits, the rights afforded to it under Code § 65.2-309 constituted a lien against any recovery Oakley might have against Courtaulds, whether by judgment or settlement. Thus, Yellow Freight further asserts that under Code § 65.2-310, the trial court was required to enforce those rights because Yellow Freight filed its petition in the action filed by Oakley consistent with the statutory provision that it do so "at any time prior to verdict." We disagree. Yellow Freight interprets Liberty Mutual too broadly.

The holding of Liberty Mutual, while clearly instructive regarding the statutory scheme considered here, is not dispositive of the specific issue raised in this appeal and is distinguished on two grounds. First, there was no question in Liberty Mutual that the employer had timely asserted its right of subrogation. Rather, the question was whether the employer could recover benefits from persons who did not participate in the settlement of a wrongful death action. Second, Liberty Mutual involved the settlement of a wrongful death action and, accordingly, the settlement was subject to approval by the trial court under Code § 8.01-55. There is no corresponding

7

requirement for trial court approval of a compromise settlement by a plaintiff who, as in this case, is sui juris.

Although we recognize that in Liberty Mutual reference is made to "the lien rights created by Code § 65.2-309," in context it is clear that the opinion was referring to rights that had matured in the course of the legal proceedings of that case.  It is also clear that Code § 65.2-309 does not refer to "lien rights" but, rather, to a "right of subrogation" in favor of the employer who has paid benefits to or on behalf of an injured employee.  Our use of the term "lien rights" in Liberty Mutual was merely a generic reference to the employer's rights under Code § 65.2-309.  Moreover, as we will subsequently explain herein, we are of opinion that to the extent that an employer has subrogation rights created by Code § 65.2-309 against the proceeds of a recovery from a third party responsible for an employee's injury, such rights must be perfected by adherence to the provisions of Code § 65.2-310 when they are asserted under that statute.

The General Assembly clearly contemplated that an employer, in pursuing an independent action as a subrogee, could unfairly prejudice the rights of an employee by entering into a compromise settlement with the third party responsible for the employee's injuries.  Accordingly, Code § 65.2-309(C) provides that the employer receive the approval of the Workers'

8

Compensation Commission and the employee before entering into a settlement of the employer's claims under its right of subrogation. This provision is mandatory and requires no affirmative action on the part of the employee to protect his rights. By contrast, Code § 65.2-310 makes no provision for restricting the right of the employee to make a compromise settlement of his claims against a third party without notice to or approval from his employer. See Safety-Kleen Corp. v. Van Hoy, 225 Va. 64, 70, 300 S.E.2d 750, 754 (1983). Thus, Code § 65.2-310 contemplates that the employer undertake affirmative action to perfect its right of subrogation in cases in which the employee has brought suit against a third party.

Subrogation is, in its simplest terms, the substitution of one party in the place of another with reference to a lawful claim, demand, or right so that the party that is substituted succeeds to the rights of the other. See, e.g., Centreville Car Care, Inc. v. North American Mortgage Co., 263 Va. 339, 345, 559 S.E.2d 870, 872 (2002); Reynolds Metals Co. v. Smith, 218 Va. 881, 883, 241 S.E.2d 794, 796 (1978). Thus, under Code § 65.2-309, the payment of workers' compensation benefits by an employer merely substitutes the employer in the place of the employee with respect to any right of recovery the employee may have against a third party to the extent of the employer's payment of such benefits. However, the right of subrogation

9

granted by this statute does not mature into an enforceable claim or lien unless, and until the right is perfected by the employer in accordance with the further provisions of this statute or those of Code § 65.2-310.

In the context of an action by the employer under Code § 65.2-309, the filing of an action against the responsible third party perfects the employer's right of subrogation and, thus, protects the employer from a subsequent settlement by the employee/subrogor and the third party. In the context of an action filed by the employee against the responsible third party, the employer's right of subrogation is perfected under Code § 65.2-310 by the filing of a petition or a motion "at any time prior to [a] verdict." In the latter circumstance, however, the employer's claim against the proceeds of a recovery from the third party is dependent upon the employee having a viable claim against the third party at the time the petition or motion is filed. The holding in Liberty Mutual is entirely consistent with this conclusion. Cases involving voluntary settlements by the parties to a suit negate the applicability of a verdict as contemplated by Code § 65.2-310.

In the present case, at the time Yellow Freight filed its petition to enforce its right of subrogation in Oakley's action against Courtaulds, Oakley had already entered into a compromise settlement of his claims in exchange for a complete and absolute

10

release of Courtaulds from any liability on those claims.  As a result, although Oakley's motion for judgment was still pending before the trial court, he no longer had an enforceable right of recovery against Courtaulds on the claims asserted in that pleading.  Even though Yellow Freight's petition was filed "prior to [a] verdict," its right of subrogation, arising from Oakley's released claims, was also no longer enforceable in that action.  Accordingly, we hold that the trial court did not err in ruling that Yellow Freight's petition was untimely and in dismissing Oakley's motion for judgment with prejudice.

## CONCLUSION

For these reasons, we will affirm the judgment of the trial court.

<u>Affirmed</u>.