## CIRCUIT COURT OF THE CITY OF SALEM

Virginia Municipal Group
Self-Insurance Association

v.

Gary Chance Crawford

November 24, 2004

Case No. (Chancery) CH03-59

BY JUDGE STANLEY P. KLEIN

In these Cross-Motions for Summary Judgment, the court must address the Complainant Virginia Municipal Group Self-Insurance Association's ("VML") assertion that Virginia law recognizes a cause of action for unjust enrichment, which entitles it to a reimbursement of workers' compensation benefits it previously distributed to Defendant Gary Chance Crawford following an injury sustained within the scope of his employment. VML contends that Virginia has a strong public policy against injured parties receiving a double recovery for their injuries and that the principles underlying that public policy mandate that Crawford reimburse VML from the proceeds of his legal malpractice settlement with attorney Bruce D. Rasmussen. These proceeds stem from Rasmussen's failure to file a personal injury action against the University of Virginia ("the third-party tortfeasor") before the expiration of the applicable statute of limitations, for the injuries suffered by Crawford that led to VML's payment of workers' compensation benefits to him. Crawford responds that neither Virginia's Workers' Compensation statutory scheme nor

Virginia common law supports VML's alleged cause of action under the factual circumstances present here.

After full consideration of the arguments presented and all of the applicable authorities, the court grants Crawford's Motion for Summary Judgment for the reasons discussed below and holds that VML is not legally entitled to reimbursement of the previously distributed workers' compensation benefits because of the settlement obtained by Crawford in his legal malpractice action.

## I. Background

Crawford was injured in an accident in his wheelchair while attending a seminar at the University of Virginia on August 15, 1995. Both parties agree that Crawford sustained these injuries within the scope of his employment for the City of Salem. He has been, during all relevant times, the Clerk of the Court for the Circuit Court of the City of Salem. On December 23, 1996, pursuant to an award by the Virginia Workers' Compensation Commission, VML, a group self-insurance association and the carrier for the City of Salem, Virginia, paid to Crawford workers' compensation benefits amounting to $214,049.22. Subsequent to the Workers' Compensation Commission's award, Crawford retained Rasmussen to file a personal injury action against, *inter alia*, the University of Virginia. Rasmussen, however, failed to file the claim within the relevant statute of limitations. As a result, Crawford subsequently sued his attorney for legal malpractice in the Circuit Court of the City of Salem.

In that action, VML (in conjunction with the City of Salem) filed a Notice of Lien based upon the sum it had previously distributed to Crawford as workers' compensation benefits in order to assert a statutory right of subrogation under Virginia Code § 65.2-309 and § 65.2-310 ("the workers' compensation subrogation statutes"). The reduced lien now claimed by VML, after deduction for Crawford's attorney's fees and costs, totals $113,446.09. On November 17, 2000, Crawford settled his malpractice action against Rasmussen for $575,000.00. After payment of attorney's fees and costs, his recovery amounted to $305,002.00. The record herein is not entirely clear whether VML filed its Notice of Lien before or after Crawford settled the legal malpractice case against Rasmussen.

Following this settlement, Crawford filed a motion to quash the aforementioned lien, arguing that the workers' compensation subrogation statutes do not authorize a lien on proceeds acquired from a legal malpractice action. Rather than contesting this motion, VML withdrew its notice of lien on

Crawford's malpractice proceeds without prejudice and filed an application with the Workers' Compensation Commission requesting that the Commission suspend distribution of Crawford's future benefits to the extent that the malpractice settlement exceeded the amount that VML had paid under the workers' compensation claim. On April 29, 2002, the Commission denied VML's request, ruling that it lacked the authority to provide such a credit against Crawford's net recovery from his legal malpractice settlement. VML did not appeal that decision.

VML thereafter filed the instant Bill of Complaint against Crawford alleging that "Crawford has been unjustly enriched to VML's detriment. . . ." Bill of Complaint, paragraph 17, and that Crawford should therefore reimburse VML for the benefits it paid to him, less a pro-rata share of Crawford's attorney's fees and expenses arising out of the legal malpractice action. After the filing of the Bill of Complaint, the judges of the Twenty-Third Judicial Circuit collectively recused themselves from this matter due to Crawford's close ties with those courts. On June 6, 2003, the Supreme Court of Virginia designated this judge to preside over this dispute in their stead. This judge had also been designated to preside over Crawford's case against Rasmussen.

On June 27, 2003, Crawford filed two Pleas in Bar and one Demurrer on unrelated issues. After briefing and oral argument, this court denied those defensive pleadings. The parties then filed a joint Stipulation of Facts and agreed that the court should rule on the merits of this matter through Cross-Motions for Summary Judgment. After a phone conference with the court, each side fully briefed the issues and agreed that the court would rule without further oral arguments.

## II. Analysis

Whether a payor of workers' compensation benefits can seek reimbursement from an injured payee who receives compensation from a legal malpractice claim, which arises from the circumstances which led to the payment of the workers' compensation benefits, appears to be an issue of first impression in Virginia. Although courts in other jurisdictions have addressed this issue, the analysis of each of those courts has focused on that state's workers' compensation subrogation statutes rather than on an equitable theory of unjust enrichment. The conclusions reached by those courts have also been decidedly mixed, with some holding that the employer is entitled to the legal malpractice proceeds through subrogation, see *Poole v. Workers' Comp. Appeal Bd.*, 810 A.2d 1182 (Pa. 2002); *Graham v. Liberty Mut. Group*, 1998

U.S. Dist. LEXIS 20026 (E.D. Pa. 1998); *Frazier v. New Jersey Mfrs. Ins. Co.,* 667 A.2d 670 (N.J. 1995); *Williams v. Katz,* 23 F.3d 190 (7th Cir. 1994) (interpreting Illinois law); *Bongiorno v. Liberty Mut. Ins. Co.,* 630 N.E.2d 274 (Mass. 1994); *Tallerday v. Delong,* 842 P.2d 1023 (Wash. App. 1993); *Toole v. EBI Cos.,* 838 P.2d 60 (Or. 1992); *McDowell v. LaVoy,* 408 N.Y.S.2d 148 (App. Div. 1978), aff'd, 390 N.E. 1179 (N.Y. 1979), while others have held that the employer is not entitled to such proceeds. See *Woodward v. Pratt, Bradford, & Tobin, P.C.,* 684 N.E.2d 1147 (Ill. App. 1997); *Smith v. Long,* 505 N.W.2d 429 (Wisc. App. 1993); *Sladek v. K Mart Corp.,* 493 N.W.2d 838 (Iowa 1992); *Travelers Ins. Co. v. Breese,* 675 P.2d 1327 (Ariz. App. 1983); *Mount Pleasant Special Sch. Dist. v. Gebhart,* 378 A.2d 146 (Del. Ch. 1977); *Fink v. Dimick,* 179 F. Supp. 354 (D. Conn. 1959). Hence, this court must ultimately examine the policies flowing directly from Virginia's workers' compensation subrogation statutes, as well as the interplay between these statutes and Virginia common law.

The common law guarantees that an aggrieved party with adequate legal standing has a right to recover damages from a third party for injuries sustained. Cf. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992) (outlining the elements of legal standing and, by implication, supporting the proposition that a party has the right to request that a court remedy an invasion of a legally protected interest). Indeed, an injured employee has a common law right to bring an action against any negligent tortfeasor, unless such a right is abrogated by statute. *Fauver v. Bell,* 192 Va. 518, 525, 65 S.E.2d 575, 579 (1951); *Feitig v. Chalkley,* 185 Va. 96, 101, 38 S.E.2d 73, 75 (1946); *Noblin v. Randolph Corp.,* 180 Va. 345, 358, 23 S.E.2d 209, 214 (1942). The Virginia General Assembly designed Virginia's workers' compensation subrogation statutes to modify this general rule by allowing an employer/carrier that already distributed workers' compensation benefits to subrogate itself into the shoes of an employee and to enforce the rights of the employee against a third-party tortfeasor. See *Safety-Kleen Corp. v. Van Hoy,* 225 Va. 64, 300 S.E.2d 750 (1983). The purpose of these subrogation statutes is to preclude an employee from obtaining a double recovery, "one in tort against the third-party tortfeasor, the other in contract under the Workmen's Compensation Act." Now titled the Workers' Compensation Act. *Gartman v. Allied Towing Corp.,* 467 F. Supp. 439, 441 (E.D. Va. 1979); see also *Michigan Mutual Ins. Co. v. Smoot,* 129 F. Supp. 2d 912 (E.D. Va. 2000); *Floyd v. O'Briskie,* 33 Va. Cir. 341 (Fairfax 1994).

A. *The Statutory Scheme*

Virginia Code §§ 65.2-309 and 65.2-310, the present versions of Virginia's workers' compensation subrogation statutes, afford an employer who has paid benefits to an injured employee the right to either sue the third-party tortfeasor directly, see Va. Code § 65.2-309, or to assert a lien in an action initiated by the employee against the third-party tortfeasor, see Va. Code Ann. § 65.2-310. The applicable version of Va. Code § 65.2-309 provided in relevant part as follows:

> A. A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative, or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. . . .
> B. Any amount collected by the employer under the provisions of this section in excess of the amount paid by the employer or for which he is liable shall be held by the employer for the benefit of the injured employee. . . .

*Id.* (Virginia Code § 65.2-309 was amended effective July 1, 2004. None of the amendments affect the court's analysis of the issues involved in this case.)

The relevant version of Virginia Code § 65.2-310 provided that:

> In any action by an employee, his personal representative, or other person against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of compensation paid and expenses for medical, surgical, and hospital attention and supplies, and funeral expenses . . . and deduct therefrom a proportionate share of such amounts as are paid by the plaintiff for reasonable expenses and attorney's fees . . . and, in the event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such compensation and expenses of the employer, less said share of expenses and attorney's fees, so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

*Id.* (This section was also amended effective July 1, 2004. Again, the amendments are not relevant to the decision in this case.)

Statutory construction requires that this court "give effect to legislative intent, which must be gathered from the words used, unless a literal construction would involve a manifest absurdity." *HCA Health Servs. of Va. v. Levin*, 260 Va. 215, 220, 530 S.E.2d 417, 420 (2000) (citation omitted). Virginia Code § 65.2-309 allows for "an assignment to the employer of any right to recover damages which the injured employee . . . may have against any other party *for such injury or death*." *Id.* (emphasis added). In drafting Virginia Code § 65.2-309, the Virginia General Assembly could have included language permitting a right of recovery from "any other source." By qualifying the phrase "any other party" with the language "for such injury or death," it is evident that the manifest purpose of this provision was solely to avoid a double recovery by the employee, from the employer on the one hand, and the third-party tortfeasor who caused the injury or death which led to the payment of the workers' compensation benefits on the other.

Virginia case law supports this conclusion. In *Sheris v. Sheris Co.*, the Virginia Supreme Court outlined the scope of the workers' compensation subrogation statute when it opined that:

> The Act permits an injured employee the right to recover from a negligent third-party full damages for injuries inflicted on him *by such party*, and the Act further gives to the employer and his insurance carrier the right to recover from *such third party* whatever amounts they actually had to pay for the benefit of the injured employee. It takes from the employee the right *pro tanto* to a double recovery, *but beyond this it leaves the employee's right to recover as it was before.*

212 Va. 825, 834, 188 S.E.2d 367, 373 (1972) (emphasis added);[1] see also *Yellow Freight Sys. v. Courtaulds Performance Films*, 266 Va. 57, 62, 580 S.E.2d 812, 813-14 (2003) (opining that Virginia Code § 65.2-309 and Virginia Code § 65.2-310 bestow on an employer "certain rights" to reimbursement "from a third party responsible for the injury"); *Stone v. George W. Helm Co. and American Mutual Liability Ins. Co.*, 184 Va. 1051,

---

[1] Additionally, the court found that "the purpose of the Act is to protect the employee and is liberally construed to that end." *Sheris*, 212 Va. at 834, 188 S.E.2d at 373; see also *Barker v. Appalachian Power Co.*, 209 Va. 162, 163 S.E.2d 311 (1968).

1057, 37 S.E.2d 70, 73 (1946) (defining double recovery as a recovery "from both the employer and the negligent third party for his injuries"); *Wood v. Caudle-Hyatt, Inc.*, 18 Va. App. 391, 398 (1994) (defining a double recovery as the receipt of workers' compensation proceeds and "common law tort damages"); *Gartman*, 467 F. Supp. at 441 (finding that the purpose of the subrogation statute is to avoid a double recovery, "one in tort against the third-party tortfeasor, the other in contract under the Workmen's Compensation Act").

On brief, VML concedes that Virginia Code § 65.2-309 and § 65.2-310 do not themselves provide any basis for this court to grant VML relief against Crawford. Defendant's Brief in Support of Motion for Summary Judgment, p. 6. It argues, however, that when this court considers the public policies underlying those statutes in conjunction with "independent equitable principles," it should preclude Crawford from retaining both the benefits received from VML and the sum recovered from the legal malpractice action. In essence, VML argues that whenever an employee is twice compensated for injuries arising out of a job related incident, the employer and its carrier should be entitled to reimbursement for all sums they paid to the employee, which are equal to or less than the sum received by the employee from another source. VML agrees that its right to reimbursement should be offset by its pro-rata share of the attorney's fees and expenses incurred in pursing the second claim. As the statutory scheme does not afford a basis for recovery under the circumstances present here, VML contends that an equitable cause of action sounding in unjust enrichment nevertheless provides an appropriate avenue for recovery. An analysis of the relevant statutory and common law, as well as fundamental principles of separation of powers, belies VML's claim that it is entitled to recover in this matter.

## B. *Unjust Enrichment*

A cause of action for unjust enrichment in Virginia "rests 'upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another'." *Kern v. Freed Co.*, 224 Va. 678, 681, 299 S.E.2d 363, 365 (1983) (internal citation omitted). Specifically, the moving party must typically demonstrate the existence of: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990).

The facts of this case unquestionably establish that Crawford has indeed received two payments for the damages he suffered as a result of his job-related accident. However, this court must still determine whether this specific enrichment was unjust. This inquiry requires the court to decide when Virginia law deems a double enrichment impermissibly inequitable. Specifically, the court must first address whether the common law always precludes receipt of a double enrichment unless a statute states otherwise or, alternatively, whether the common law generally permits the receipt of a double enrichment absent a statute precluding a "double recovery." In so doing, the court can then determine whether VML has a general common law right to prevent a double enrichment or whether its rights should be limited to the remedies set forth in Virginia Code § 65.2-309 and § 65.2-310.

The history of the Workers' Compensation Act makes clear that following its passage, but prior to an amendment instituting a similar version of the present-day workers' compensation subrogation statutes, Virginia law permitted the receipt of a double recovery by an employee. The General Assembly initially adopted the Workers' Compensation Act[2] in 1918, without any provision authorizing any rights of subrogation or assignment of claims on behalf of employers against recoveries by employees from third-party tortfeasors. *Noblin v. Randolph Corp.*, 180 Va. 345, 349, 23 S.E.2d 209, 210 (1942). As the *Noblin* Court noted, in the Act's original form, an employee injured by a third party during the course and scope of his or her employment "could claim compensation from his employer and also proceed in a common law action for the recovery of full damages from such third party. In such an event, an employee could obtain a double recovery for the same injuries." *Id.*

As a result, in 1920, the General Assembly added an assignment provision to Section 12 of the Workers' Compensation Act for the specific purpose of eliminating the possibility of such double recovery. *Id.* The history of the Workers' Compensation Act thus makes clear that, over sixty years ago, the Supreme Court of Virginia explicitly recognized that, absent the existence of a statute to the contrary, the common law allowed an injured party to recover benefits twice, once from its employer and again from a third-party tortfeasor.

Contrary to VML's position herein, a series of Virginia decisions has further established that in the workers' compensation context "the right of subrogation . . . does not depend upon equitable principles. . . . It is purely statutory and arises when the conditions specified in the statute are met." *Stone v. George W. Helm Co. and American Mutual Liability Ins. Co.*, 184

---

[2] This was then referred to as the Virginia Workmen's Compensation Act.

Va. 1051, 1059-60, 37 S.E.2d 70, 73 (1946); see also *United States Fid. & Guar. Co. v. Blue Diamond Coal Co.*, 161 Va. 373, 170 S.E. 728 (1933) ("the right of the employer, or his insurance carrier, does not rest on the principle of subrogation. It is wholly a creature of the statute . . . ."); *Tomlin v. Vance Int'l*, 22 Va. App. 448, 452, 470 S.E.2d 599, 601 (1996) (recognizing that "subrogation rights 'arise' under the Workers' Compensation Act"); *Crab Orchard Improvement Co. v. Chesapeake & O. Ry.*, 115 F.2d 277, 280 (4th Cir. 1940) (finding that the Supreme Court of Virginia "has clearly recognized that the employer has no common-law right of subrogation against the third-party tortfeasor").

Recently, the Supreme Court of Virginia once again addressed this issue in *Yellow Freight Sys. v. Courtaulds Performance Films*, 266 Va. 57, 580 S.E.2d 812 (2003). In *Yellow Freight*, an employee was injured while making a delivery to a third party for his employer. As a result, his employer paid him substantial workers' compensation benefits. The employee later filed suit against the third party under tort theories of premises and products liability. Eventually, the employee reached a settlement with the third party, but before an order could be entered dismissing the case as settled, the employer filed a petition pursuant to Virginia Code § 65.2-310 seeking reimbursement for the workers' compensation benefits it had paid to the employee. The trial court ruled that the petition was untimely because the employee no longer had a valid claim against the third party when the petition was filed, and the Supreme Court affirmed. *Id.* at 65, 580 S.E.2d at 815. In its opinion, the Court addressed the interplay between Virginia Code §§ 65.2-309 and 65.2-310 and the rights of an employer to be subrogated in place of an employee, to the extent of workers' compensation benefits paid by the employer to the employee. The Supreme Court articulated that "the right of subrogation granted by [§ 65.2-309] does not mature into an enforceable *claim or lien unless* and *until the right is perfected* by the employer *in accordance* with the further provisions of this statute or those of Virginia Code § 65.2-310." *Id.* at 64, 580 S.E.2d at 815. Hence, contrary to VML's position here, an employer's right of subrogation arising from these workers' compensation subrogation statutes does not become an enforceable claim until the employer has satisfied the conditions delineated in the statutes. VML makes no claim herein that it properly perfected any rights of subrogation it may have had pursuant to this statutory scheme. As such, it has no valid subrogation claim arising from these statutes.

Nor does Virginia law support VML's position that any receipt of a double payment by an injured person necessarily constitutes an impermissible double recovery in contravention of Virginia public policy. In fact, two

Virginia statutes enacted by the General Assembly, Virginia Code § 38.2-3405(A) and Virginia Code § 38.2-2209, not only sanction such a double enrichment when health insurance and medical payments coverage provide benefits for a party injured by a third-party tortfeasor, but also forbid any right of subrogation on behalf of an insurer against the third-party tortfeasor. Section 38.2-3405(A) reads in pertinent part as follows:

> No insurance contract providing hospital, medical, surgical, and similar or related benefits, and no subscription contract or health services plan delivered or issued for delivery or providing for payment of benefits to or on behalf of persons residing in or employed in this Commonwealth shall contain any provision providing for subrogation of any person's right to recovery for personal injuries from a third person.

*Id*. Virginia Code § 38.2-2209 forbids any right of subrogation in favor of a liability insurance carrier against a third-party tortfeasor for sums the insurer paid an insured for medical expenses incurred for bodily injury caused by an accident. Similarly, Virginia Code § 38.2-2216 forbids an insurance company from issuing a bodily injury liability policy which reduces the amount of damages recoverable under the liability or uninsured motorist coverages of the policy by any sum payable under the medical payments coverage of the policy. These statutes, which have existed for decades, potentially allow persons injured in automobile accidents to recover for their medical expenses two or more times, as those persons can receive payment from not only the tortfeasor, but also from their health insurance and automobile insurance companies, if they have chosen to obtain such insurance coverage. Nonetheless, the Virginia General Assembly has elected not to repeal or modify these statutes which mandate multiple recoveries by injured parties. The continuing existence of these statutes belies any claim that any double retention of benefits by an injured party contravenes Virginia public policy. To allow VML to recover here would, by implication, necessarily mean that any insurance company that paid benefits to an injured party could recover such sums through an equitable claim sounding in unjust enrichment, notwithstanding the existence of Virginia statutes precluding the right to such a recovery through contractual provisions.

Virginia common law also authorizes a plaintiff to retain multiple payments arising from the same injuries in certain situations. For more than a century, Virginia has recognized and applied the collateral source rule. *Acordia Ins. v. Genito Glenn, L.P.*, 263 Va. 377, 387, 560 S.E.2d 246, 251

(2002); *Acuar v. Letourneau*, 260 Va. 180, 188, 531 S.E.2d 316, 320 (2000); *Schickling v. Aspinall*, 235 Va. 472, 475, 369 S.E.2d 172, 174 (1988); *Walthew v. Davis, Adm'r*, 201 Va. 557, 562-63, 111 S.E.2d 784, 787-88 (1960); *Johnson v. Kellam*, 162 Va. 757, 764-65, 175 S.E. 634, 636-37 (1934); *Baltimore RR v. Wightman's Adm'r*, 70 Va. (29 Gratt.) 431, 446 (1877) (rev'd on other grounds sub nom. *Railroad Co. v. Koontz*, 104 U.S. 5 (1881)). Pursuant to the collateral source rule, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Schickling*, 235 Va. at 474, 369 S.E.2d at 174. As a result, absent a contractual or statutory right of subrogation on behalf of the insurer, multiple payments to the injured party for the same damages will be upheld by Virginia common law.

Two rationales have been articulated by the Supreme Court in support of the continuing vitality of the collateral source rule. First, if either an injured party or a tortfeasor should be afforded a windfall as a result of collateral benefits available to the injured party, it should be the victim, not the wrongdoer who reaps the benefit of the windfall. See *Schickling*, 235 Va. at 475, 369 S.E.2d at 174. Second, a tortfeasor should not enjoy the benefits paid to an injured party because of that party's foresight in obtaining insurance or as a result of benefits provided to the injured party by an employer, whether contractual in nature or gratuitous. See *Acuar*, 260 Va. at 192, 531 S.E. 2d at 322; *Schickling*, 235 Va. at 474, 369 S.E.2d at 174 (citing 22 Am. Jur. 2d, *Damages*, §§ 566-87 (1988)). Admittedly, the first stated rationale has no application to the circumstances presented here. However, the second rationale does support Crawford's position. Crawford obtained a job with the Circuit Court of the City of Salem which, among other benefits, provided him with workers' compensation insurance. As the Supreme Court recognized in *Acordia Ins.*:

> If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or *by making advantageous employment arrangements, the law allows him to keep it for himself.* If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.

*Id.* at 387, 560 S.E.2d at 251 (quoting Restatement (Second) of Torts § 920 A (1979) (emphasis added)).

Here, while conceding that it has no direct right to reimbursement from Crawford for damages he obtained in his legal malpractice action, VML asserts that it may nonetheless deprive him of benefits that his employer provided for him because retention of workers' compensation benefits under such circumstances would allow an impermissible double recovery and, thus, an unjust enrichment of Crawford. The foundation of that assertion rests upon an assumption that, under Virginia law, any employer who provides workers' compensation benefits to an employee who receives an additional recovery from a collateral source would be entitled to recovery of the benefits it paid to the employee. That underlying assumption has been squarely rejected by the Supreme Court of Virginia in *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 123 S.E.2d 401 (1962).

In *Horne*, a vehicle operated by a negligent third-party tortfeasor seriously injured Ellis Horne who was driving his wife's vehicle within the scope of his employment. Horne's wife possessed a liability insurance policy with Aetna Insurance Company ("Aetna") bearing Horne's name and containing uninsured motorist coverage. As the other driver was uninsured, Horne obtained one full recovery from Aetna and then proceeded to file a claim with the Industrial Commission for the same injuries. The Commission, however, denied the claim, ruling, in part, that Horne's voluntary release of his claim against Aetna had impermissibly terminated his employer's subrogation rights, thus precluding Horne from obtaining workers' compensation benefits. The Supreme Court of Virginia reversed, ruling that, even though Aetna's liability to Horne arose out of the negligent acts of a third party, "it was not contemplated or intended by the General Assembly that the employer's right of subrogation under the Workers' Compensation Act should extend to the employee's rights under the uninsured motorist coverage of a liability policy." *Id.* at 286, 123 S.E.2d at 404. Indeed, the Supreme Court recognized in its opinion that Horne's wife had at her own expense purchased additional insurance protection "for herself and others protected thereby and not for [her employer] or its compensation carrier." *Id.* at 285-86, 123 S.E.2d at 404. The Supreme Court continued:

> *In the absence of a statutory provision giving the employer* or its compensation carrier *a right of subrogation* against an insurer of the employee under the uninsured motorist provision of a liability policy, *such a right does not exist.* We hold that § 65-38, *supra,* does not give that right, and the insurer in the present case is not "any other party" within the contemplation of the statute.

*Id.* at 286, 123 S.E.2d 404 (emphasis added; citation omitted). Citing its prior decision in *Stone v. George W. Helme Co.*, 184 Va. 1051, 1057, 37 S.E.2d 70, 73 (1946), the Court reiterated that an employee is precluded from receiving a double recovery from both the employer and the negligent third party. *Horne*, 203 Va. at 288, 123 S.E.2d at 405. The Court noted, however, that Horne's settlement was not with the alleged negligent third party but rather with his wife's insurance company, which had contractually agreed to pay him benefits in the event of injuries covered by its policy. As a result, the Court held that "under these circumstances, a prosecution of his claim for compensation benefits would *not amount to a double recovery,* and we so hold." *Id.,* 123 S.E.2d at 408 (emphasis added).

Similarly here, Rasmussen was not the negligent third party who caused Crawford the injuries contemplated by the Workers' Compensation Act, and, "absent a statutory provision giving the . . . compensation carrier a right of subrogation . . . such a right does not exist." *Id.* Thus, the Supreme Court of Virginia has explicitly limited the scope of an impermissible double recovery to the receipt of both workers' compensation benefits by an employee, from an employer or its carrier, and compensation in tort from the third-party tortfeasor who caused the underlying workers' compensation claim.

## C. *Statutory Construction*

In Virginia, there is a presumption that "when the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and, if the legislature intends to countermand such appellate decisions, it must do so explicitly." *Weathers v. Commonwealth,* 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001). Despite a half century of jurisprudence on this statutory scheme limiting an employer's subrogation rights to proceeds obtained by the employee from the party causing the underlying personal injury, until its session this year, the Virginia legislature declined to amend the workers' compensation subrogation statutes to create any additional rights of subrogation or reimbursement when the employee received compensation from any source in addition to the benefits received from the employer or its carrier.

This year, the General Assembly did enact Virginia Code § 65.2-309.1, which authorizes an employer to be subrogated to the rights of an employee who receives compensation pursuant to an uninsured motorist provision in an insurance policy which provides coverage for the third-party tortfeasor. Although this enactment may prospectively overrule the decision of the

Supreme Court of Virginia in *Horne v. Superior Life Ins. Co.*, over forty years after that decision was rendered, the General Assembly did not enact a more expansive right of subrogation covering claims such as the legal malpractice claim implicated here. Nor did it elect to enact legislation overruling the effect of the Supreme Court's decision in *Yellow Freight*. Well-recognized principles of statutory construction in Virginia inform that, when a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the enactment. *Department of Corrections v. Brown*, 259 Va. 697, 704, 529 S.E.2d 96 (2000); *Turner v. Wexler*, 244 Va. 124, 127, 418 S.E. 2d 886, 887 (1992). Contrary to VML's position in this case, if further rights are to be accorded employers and their workers' compensation carriers under the workers' compensation subrogation statutes, it is solely within the purview of the legislative branch of government to grant such additional rights. The constitutional function of the judiciary is to enforce rights created by the legislature, not to create additional rights by way of judicial fiat. Va. Const., Art. III, § 1. Thus, the express language of the Virginia workers' compensation statutes, longstanding maxims of statutory construction, and constitutional doctrine, as well as Virginia case law, all support the conclusion that Crawford's receipt of proceeds from his legal malpractice case, in addition to his workers' compensation benefits, does not constitute an impermissible double recovery under Virginia law.

### D. *Complainant's Reliance on Michigan Mutual Ins. Co. v. Smoot*

VML nonetheless contends that allowing Crawford to retain both his workers' compensation benefits and the proceeds of the settlement of the malpractice case will allow Crawford to receive a windfall at VML's expense. It argues that this court should adopt the analysis of the United States District Court for the Eastern District of Virginia in *Michigan Mutual Ins. Co. v. Smoot*, 129 F. Supp. 2d 912 (E.D. Va. 2000), and find that an equitable cause of action for unjust enrichment should therefore lie. VML's reliance on *Smoot* is misplaced for multiple reasons.

First, *Smoot* involved a situation where the employer's carrier sought to recover benefits paid to the employee by the *actual* third-party tortfeasor who had caused the injuries for which the workers' compensation benefits were paid. In his opinion, Judge Gerald Bruce Lee opined that "to permit Smoot to keep his full *tort* award and all of his workers' compensation benefits would be unjust." *Smoot*, 129 F. Supp. 2d at 921 (emphasis added). Judge Lee likened Virginia's workers' compensation subrogation statutes to those of other states that preclude an employee from retaining both workers'

compensation benefits "and damages received in the proceeding against the tortfeasor who caused the employee's injury." *Id.* Here, contrary to the situation in *Smoot,* it cannot be claimed that Rasmussen was the third-party tortfeasor who caused Crawford the injuries for which the VML paid compensation benefits. Indeed, under Virginia law, Crawford's claim against Rasmussen for legal malpractice is based in contract, not tort law. *O'Connell v. Bean,* 263 Va. 176, 181, 556 S.E.2d 741 (2002); *Olyear v. Kerr, Trustee,* 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). For the reasons analyzed above, contract claims against lawyers are not within the scope of subrogation rights created by Va. Code §§ 65.2-309 and 65.2-310.

Second, the rationale underlying the court's decision in *Smoot* is premised, in part, upon the distinction between the *statutory lien* that the *Smoot* court acknowledged no longer existed because the carrier had not timely perfected its lien and the carrier's *claim* which the court held remained viable. *Id.* at 919. This rationale is expressly undermined by the Supreme Court's subsequent decision in *Yellow Freight v. Courtaulds,* wherein the Court held that "the right of subrogation granted by [§ 65.2-309] does not mature into an enforceable *claim* or *lien* unless and until the right is perfected by the employer in accordance with the further provisions of this statute or those of Code § 65.2-310." *Yellow Freight,* 266 Va. at 64, 580 S.E.2d at 815 (emphasis added).

Third, the principal underpinning of the court's decision in *Smoot* was the view that an employer or its carrier has a right of reimbursement directly from an employee notwithstanding the absence of a statute authorizing such relief, "because of the overarching policy in this area of law against an injured employee being twice compensated for the same injury." *Smoot,* 129 F. Supp. 2d at 918. The *Smoot* court repeatedly noted the "strong principle against *double recovery* sounding in workers' compensation law." *Id.* at 921 (emphasis added). Nowhere in his well-researched and well-written opinion did Judge Lee address, however, the Supreme Court's holding in *Horne v. Superior Life Ins. Co.* This court must assume that the parties in *Smoot* did not present the Supreme Court's decision in *Horne* to the court, because *Horne's* holding that the two-fold enrichment of the employee in that case did not "amount to [an impermissible] double recovery," 203 Va. at 288, 123 S.E.2d at 408, undermines the breadth of the public policy statement enunciated by the court in *Smoot.*

Finally, in reaching its conclusion that a cause of action for unjust enrichment was properly stated in Michigan Mutual's Complaint, the *Smoot* Court relied on statutes enacted in some of Virginia's sister states that expressly authorize a direct right of reimbursement against an employee who

recovers from both the employer's workers' compensation carrier and the third-party tortfeasor who caused the injuries leading to the payment of workers' compensation benefits. *Id.* at 922. However, as analyzed above, the Virginia General Assembly has declined to enact similar legislation in the Commonwealth and long-accepted principles of statutory construction counsel against reading into Virginia's statutory scheme that which the legislature has not elected to include. (See *supra.*) As such, this court finds VML's reliance on *Smoot* unavailing. Nor does this court find VML's reliance on *Henry's Wrecker Service Co. v. Smoot*, 35 Va. App. 365, 374, n. 5, 545 S.E.2d 551, 555, n. 5 (1996), and *Sorrell v. Lucas*, 54 Va. Cir. 181 (Roanoke, 2000), persuasive. The relevant footnote in *Henry's Wrecker* was pure *obiter dicta* which preceded the Supreme Court's decision in *Yellow Freight*. Further, *Sorrell* was not an unjust enrichment case, did not present the issue whether Virginia's workers' compensation subrogation statutes applied to parties other than the original third-party tortfeasor, and was also decided before *Yellow Freight*.

## E. *Complainant's Equitable Remedy Argument*

Ultimately, VML concedes that it has no remedy at law,[3] yet posits that this court, sitting in equity, should remedy the injustice of Crawford's keeping both his workers' compensation benefits and his recovery from the legal malpractice settlement. This argument also fails for two independent reasons. First, even if this court were to believe that an injustice has occurred, as the Supreme Court of Virginia has recently articulated, "[a] chancellor must have a cognizable basis for granting equitable relief and is not authorized to take a particular course of action simply because he thinks that such action is just and appropriate." *Waikoloa, Ltd. P'ship v. Arkwright*, 268 Va. 40, 48, 597 S.E.2d 49, 54 (2004); *Tiller v. Owens*, 243 Va. 176, 179, 413 S.E.2d 51, 53 (1992); see also *Price v. Price*, 122 W. Va. 122, 7 S.E.2d 510 (1940) ("whenever the rights of parties are clearly defined and established by law '*equality follows the law* despite the rule that *equality is equity*'").

Second, under the circumstances present in this case, this court also finds that Crawford's receipt of dual proceeds is not unjust for purposes of an unjust enrichment claim. To find an unjust enrichment claim viable, a plaintiff must be deprived of an entitled right. Specifically, this action "rests 'upon the

---

[3] Complainant's Brief in Support of Motion for Summary Judgment, p. 6; Complainant's Response to Defendant's Memorandum in Support of Motion for Summary Judgment, p. 2.

doctrine that a man shall not be allowed to enrich himself *unjustly at the expense of another*'." *Kern*, 224 Va. at 681, 299 S.E.2d at 365 (1983) (internal citation omitted) (emphasis added). Unjust enrichment involves the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected. *Mutual Funding, Inc. v. Collins*, 62 Va. Cir. 34, 38 (Spotsylvania, 2003). Any expectation of reimbursement by VML in the face of the statutes, constitutional principles, and case law set out above, would have been inherently unreasonable.

Here, VML provided workers' compensation benefits to Crawford, who was entitled to those benefits based upon his employment with the City of Salem. In the absence of the negligence of a third party, VML would have been contractually required to provide Crawford with the full panoply of workers' compensation benefits, without any expectation of reimbursement from any party. Indeed, the payment of these benefits arises out of the contractual relationship of the parties and is simply one of the expenses associated with doing business in the Commonwealth of Virginia. See *Feitig v. Chalkley*, 185 Va. 96, 103, 38 S.E.2d 73, 76 (1946). In the event that VML desired to seek reimbursement from the party that had caused the compensable injury to Crawford, Virginia Code § 65.2-309 provided statutory authorization to commence an action against the alleged third-party tortfeasor at any time before the expiration of the applicable statute of limitations. VML declined to take any such action, and, when the statute expired, it no longer had any legally cognizable claim for reimbursement under Virginia law. Seemingly, VML made a business decision that the expense of initiating and prosecuting an action against the Commonwealth of Virginia for reimbursement of the benefits it had paid to Crawford was not warranted under the circumstances.

Crawford, however, did decide to pursue such a claim, but his attorney failed to timely file the necessary lawsuit. At his sole expense and risk, Crawford elected to bring a legal malpractice case against his attorney to attempt to recover damages arising from his attorney's failure to perform under the contract between them. Crawford retained his own counsel, at his own expense, to prosecute this malpractice case, without any assistance from VML. Nonetheless, years after its statutorily prescribed rights had terminated, VML now asks Crawford to reimburse it in the same sum to which it would have been entitled, if it had elected to exercise its statutory prerogative, with the attendant costs and expenses. In essence, it is VML which is now seeking a windfall out of the proceeds recovered by Crawford from his legal malpractice claim against his former attorney. While Crawford may have been twice enriched because he elected to prosecute his legal malpractice case, such enrichment was not "at the expense of [VML]." *Kern*, 224 Va. at 681, 299

S.E.2d at 365. As such, for these additional reasons, VML's claim for recovery under a theory of unjust enrichment must fail.

*III. Conclusion*

For each of the reasons set out above, the court denies plaintiff Virginia Municipal Group Self-Insurance Association's Motion for Summary Judgment and grants defendant Gary Chance Crawford's Cross-Motion for Summary Judgment. Accordingly, this matter is dismissed with prejudice.